# United States District Court

SOU"IERN ———— DISTRICT OF ———— NEW YORK

.ph A. Po.gioli, Jr.,

Plaintiff,

94 CIV 8313

SUMMONS IN A CIVIL ACTION

V.

CASE NUMBER:

Patrick *. Carroll, individually and as Police Commissioner of the
City of New Rochelle, Cominic Capio, individually and as a
Lieutenant in the Police Department of the city of New Rochelle
Anthony Murphy, individually and as a Captain in the Police
Department of the City of New Rochelle, Joseph F. Schaller,
individually and in his capacity as a Captain in the Police
Department of the City of New Rochelle, Police Officer John
Doe and/or Mary Roe individually, the City of New Rochelle, New York
and Jos.O~ ~~~~~~~ individually,

JUDG~~~~~R

Patrick J. Carroll
Dominic Capio
Anthony Murphy
Joseph F. Schaller
John Doe and/or Mary Roe
City of New Rochelle
Joseph Maccone

(all located at City of New Rochelle, 515 N. Ave., New
Rochelle, New York)

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

Lovett & Gould
11 Martine Avenue
White Plains, New York 10606

in answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of
his summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

_James M. Parker_

RK

_Elizabeth A. Flanney_

DEPUTY CLERK

NOV 16 1994

DATE

AO 440 (Rev.1/90) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served : _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
   Name of person with whom the summons and complaint were left : _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                  *Date*                              *Signature of Server*

                              _____
                                          *Printed Name of Server*

                              _____
                                          *Address of Server*

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOSEPH A. POGGIOLI, JR.,

       Plaintiff,   94 Civ.

   -against-

PATRICK J. CARROLL, individually
and as Police Commissioner of the
City of New Rochelle, DOMINIC
CAPIO, individually and as a
Lieutenant in the Police Department
of the City of New Rochelle, ANTHONY
MURPHY, individually and as a
Captain in the Police Department of
the City of New Rochelle, JOSEPH
F. SCHALLER, individually and in
his capacity as a Captain in the
Police Department of the City of
New Rochelle, Police Officer JOHN
DOE and/or MARY ROE individually,
the CITY OF NEW ROCHELLE, New York,
and JOSEPH MACCONE, individually,

      Defendants.
------------------------------------x

COMPLAINT

JUDGE

Jury Trial Demanded

   Plaintiff JOSEPH A. POGGIOLI, JR., by his attorneys

Lovett & Gould, Esqs., as and for his complaint herein

respectfully alleges:

## NATURE OF THE ACTION

   1. This action is brought pursuant to 42 U.S.C. Section

1983 and 1988 for deprivations by Defendants under color of

law of Plaintiff's rights, privileges, and immunities as

guaranteed to him by reason of the Fourth and Fourteenth

Amendments to the United States Constitution.

1

## JURISDICTION

2. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. Section 1331 and 1343(3).

## THE PARTIES

3. Plaintiff JOSEPH A. POGGIOLI, JR., is a citizen of the United States, a resident of the City of New Rochelle, New York, and at all times relevant to this complaint and for the past approximately fourteen years has been a duly appointed police officer employed by the Defendant City of New Rochelle.

4. Defendant PATRICK J. CARROLL (hereinafter "Carroll"), who is sued individually and officially, at all times relevant to this complaint has been the duly appointed Commissioner of Police of the Defendant City of New Rochelle, New York.

5. Defendant DOMINIC CAPIO (hereinafter "Capio"), who is sued individually and officially, at all times relevant to this complaint has been a Lieutenant in the Internal Affairs Division of the Police Department of the defendant City of New Rochelle.

6. Defendant ANTHONY MURPHY (hereinafter "Murphy"), who is sued individually and officially, at all times relevant to this complaint has been a Captain in the Police Department of the defendant City of New Rochelle.

7. Defendant JOSEPH F. SCHALLER (hereinafter "Schaller"), who is sued individually and officially, at all

2

times relevant to this complaint has been a Captain in the Police Department of the defendant City of New Rochelle.

8. Defendants JOHN DOE and MARY ROE are police officers employed by the Police Department whose true identities are presently unknown to Plaintiff. Said Defendants acting, upon information and belief, at the direction of Defendants Carroll and/or Capio and/or Murphy and/or Schaller on or about September 16, 1994, intentionally, unlawfully and without authority or permission irreparably destroyed personal property belonging to Plaintiff in order to gain unauthorized access to Plaintiff's locker at Police Headquarters in the City of New Rochelle for the purpose of breaching Plaintiff's attorney-client privilege with his PBA attorney, reviewing notes made by Plaintiff memorializing communications between him and his PBA attorney with respect to Plaintiff's defense and strategy in a civil service disciplinary action pending against him by reason of charges preferred by Defendant Murphy, and securing and/or attempting to secure evidence to be used against Plaintiff in connection with the prosecution of said disciplinary. Defendants Doe and Roe upon information and belief engaged in this conduct while acting in concert with and in furtherance of a common scheme or plan or conspiracy entered into by and amongst inter alia Defendants Carroll, Murphy, Schaller and Capio.

3

9. Defendant CITY OF NEW ROCHELLE (hereinafter "City") is a municipal corporation duly existing by reason of and pursuant to the laws of the State of New York.

10. Defendant JOSEPH MACCONE (hereinafter "Maccone"), who is sued individually, is the duly appointed hearing officer who has been appointed by Defendant Carroll to preside over the civil service disciplinary proceeding referenced _supra_ in paragraph "8" and more specifically described _infra_. As against Maccone Plaintiff seeks no damages whatsoever since Maccone is named as a party defendant solely for the purpose of effectuating certain aspects of the injunctive relief sought in this action.

## THE FACTS

11. On an annual basis there is conducted within the Town of Harrison, New York, a golf tournament known over the years alternatively as the Westchester Golf Classic and/or the Buick Classic (hereinafter "Classic" or "tournament").

12. Each year and in anticipation of the conduct of that tournament the sponsors of that event and/or the Chief of Police of the Town of Harrison Police Department are authorized and invited police officers from police departments throughout the County of Westchester to provide security services during the Classic in exchange for compensation paid by the Classic's sponsors.

13. Over the years during which the Classic has been held members of such police departments have routinely

4

accepted that invitation, by submitting to the Harrison Police Department a form indicating which dates and at what times they can work. Such officers including members of the City's Police Department have, in connection with that work, worn their departmental police uniform, badge and off-duty firearm.

14. At no time has the prior written approval of the New Rochelle Police Commissioner been required and/or obtained and/or given as a prerequisite for any police officer of said Department to work at the Classic.

15. Over the years in which members of the City's Police Department have worked at the Classic, many of such officers have worked in excess of and/or substantially in excess of twenty hours per week for the Classic. Except as set forth below, upon information, not a single such officer (whether patrolman or ranking officer) has ever been the subject of disciplinary action by reason of their:

a. Failure to obtain the prior written permission of the Police Commissioner to work at the Classic,

b. Wearing a New Rochelle police uniform during the performance of work at the Classic,

c. Carrying of a departmentally issued firearm during the performance of work at the Classic, and

d. Working in excess of twenty hours in a week in connection with the provision of security for the Classic.

16. The facts alleged in paragraphs "13" through "15" inclusive were known to Defendants Carroll, Capio, Murphy,

Schaller, Officers Doe and Roe at all times pertinent to the events alleged in this complaint.

17. On or about February 17, 1994, Defendant Murphy issued a verbal order to Plaintiff absolutely forbidding, for an indefinite period of time, Plaintiff from engaging in "off-duty" employment. "Off-duty" employment is a technical descriptive term which, within the City Police Department, exclusively refers to off-duty, private work assignments given out by the Department's Assignment Officer; work at the Classic has never been assigned by the Assignment Officer and has never within the Department been considered and/or treated as a form of "off-duty" assignment.

18. At the time Murphy issued the verbal order referred to in the preceding paragraph he was motivated to do so by reason of completely arbitrary, capricious, spiteful and malicious personal concerns irrelevant to legitimate law enforcement purposes.

19. On or about February 17, 1994, Murphy also ordered Plaintiff's removal from the Police Department's prestigious Honor Guard on the false pretext that "younger blood" was needed with respect to the Honor Guard's membership.

20. At the time Murphy issued the order referred to in the preceding paragraph he was motivated to do so by reason of completely arbitrary, capricious, spiteful, and malicious personal concerns irrelevant to legitimate law enforcement purposes.

21. Defendant Murphy's order of February 17, 1994, violated, with respect to "off-duty" work assignments, Plaintiff's New York State statutory entitlement [N.Y. General Municipal Law Section 208-d] to engage in private employment subject to certain exceptions irrelevant to Murphy.

22. Notwithstanding the illegality of Murphy's order, Plaintiff unwillingly complied and since February 17, 1994, has not once accepted and/or worked an "off-duty" ... assignment.

23. By reason of Murphy's order of February 17, 1994, Plaintiff was expelled from the Honor Guard, required to turn in all equipment pertaining thereto, and was for no legitimate reason subjected to public embarrassment, humiliation, ridicule and shame.

24. On or about June 7, 1994, Plaintiff requested that Murphy rescind his order of February 17, 1994, to the extent that it forbade Plaintiff from accepting from the Assignment Officer "off-duty" assignments. At the time of that request Plaintiff advised Murphy that he [Plaintiff] was going to be on vacation for the period of approximately June 8 to June 22, 1994, that he wanted to work "off-duty" assignments through the Department for the entirety of said vacation, and that he needed to earn extra moneys during his vacation by accepting "off-duty" assignments because he was getting married on October 18, 1994, and anticipated considerable expenses in connection with the wedding.

7

25. Motivated by personal, arbitrary, capricious, spiteful and malicious concerns irrelevant to law enforcement, Murphy without reason and/or rationale basis refused Plaintiff's request.

26. Since Plaintiff was, by reason of Murphy's conduct, precluded from availing himself of departmentally assigned "off-duty" assignments, he determined to work on June 8, 9, and 10, 1994, at the Classic and therefor submitted to the Harrison Police Department and/or the Classic's sponsor the same written request for security work at the tournament as he had previously submitted for the past approximately ten years.

27. With respect to the past ten years, Plaintiff has in fact worked under the direction and control of the Harrison Police Department and/or sponsor of the Classic and provided security services during the conduct of the tournament. For each of those years Plaintiff has, in connection with that work and with the knowledge of the municipal defendants, worn his police uniform and off-duty firearm. Neither with respect to Plaintiff nor any other member of the City Police Department who has worked at the Classic during the past ten years, has any prior written approval of the City Police Commissioner ever been required, sought, and/or obtained with respect to the performance of that work and/or the wearing of the police uniform and/or the carrying of a firearm.

28. In fact on June 8, 9, and 10, 1994, Plaintiff performed private security work at the Classic, during which work he wore his police uniform and off-duty firearm.

29. Knowing that Plaintiff had not violated any departmental order, rule and/or procedure by working at the Classic, aware that Carroll and Murphy had entered into a scheme to terminate Plaintiff's employment, and with a view towards assisting Carroll and Murphy realize that objective, Defendant Capio on or about June 22, 1994, advised Plaintiff that he was being considered for possible disciplinary action regarding unauthorized "off-duty" employment. Capio further ordered Plaintiff to submit to an "interview" by the Internal Affairs Office of the City Police Department on June 24, 1994; Capio and Murphy later conducted that "interview".

30. Knowing that Plaintiff had not violated any departmental order, rule and/or procedure by working at the Classic and having pre-determined to terminate Plaintiff's employment, Defendant Carroll on or about June 24, 1994, effective immediately suspended Plaintiff without pay from his duties as a police officer in anticipation of the service upon Plaintiff of civil service disciplinary charges each of which was thereafter intentionally, falsely preferred by Defendant Murphy.

31. On or about June 27, 1994, Murphy upon information and belief in violation of Section 75 of the New York State Civil Service Law, presumed to personally prefer twenty-two

9

materially false charges against Plaintiff all of which concerned Plaintiff's three days of work at the Classic during his June vacation. Despite the falsity of said charges, upon information and belief, Defendant Carroll has along with Defendants Murphy and inter alia Maccone entered into an agreement and/or scheme to convict Plaintiff of those charges or some of them regardless of the proof and to terminate his employment.

32. Pursuant to and in furtherance of Defendants' agreement on or about June 27, 1994, Carroll appointed Maccone to serve as the "Hearing Officer" to preside over the conduct of Plaintiff's disciplinary. Upon information and belief Maccone has accepted said appointment with the understanding either express or implied, that Plaintiff is to be terminated after the conduct of that proceeding.

33. On or about July 29, 1994, after completing the maximum payless suspension permitted under the New York State Civil Service Law, Plaintiff returned to duty at which time he was required by Carroll and/or Murphy to work in a New Rochelle Police Department uniform without a badge, identification card or firearm.

34. The requirement that Plaintiff work in uniform without a badge, identification card or firearm was maliciously and deliberately intended to endanger Plaintiff's personal safety, to subject Plaintiff to on the job embarrassment, humiliation and shame, and to otherwise degrade him with a view towards coercing his resignation.

Plaintiff has, since on or about July 29th to the present, continuously been required to suffer these indignities.

35. Since Plaintiff's return to work from his payless suspension, Carroll and/or Murphy have required him to work exclusively in communications, a circumstance which along with the deprivation of a badge, identification card and weapon has precluded Plaintiff from working otherwise available overtime job duties.

36. Defendants' imposition of a payless suspension was malicious and inspired by a spiteful intent to arbitrarily injure Plaintiff financially knowing that by reason of his then imminent wedding Plaintiff had unusually pressing financial needs.

37. Defendants' post-suspension deprivation from Plaintiff of his badge, identification card, and firearm was malicious and inspired by a spiteful intent to arbitrarily injure Plaintiff financially knowing that by reason of his then imminent wedding Plaintiff had unusually pressing financial needs.

38. By reason of Defendants' conduct Plaintiff has been subjected to ridicule, including *inter alia* intra-departmental references to him as "NB" [No Badge], "a cop without a badge", and "badgeless".

39. Upon the direction of Carroll and/or Murphy and/or Schaller, Defendants John Doe and/or Jane Roe on or about September 16, 1994, without authority or permission and in violation of departmental practice and procedure, destroyed

11

personal property owned by Plaintiff, to wit a combination lock, and thereby gained illegal access to Plaintiff's police department locker.

40. Upon information and belief the purpose for the locker break-in was to illegally seize potential evidence to use against Plaintiff at his as yet scheduled disciplinary hearing and to review and/or copy handwritten notes which Plaintiff had secured in an attaché case in his locker which notes memorialized the sum and substance of privileged conversations engaged in by Plaintiff and his Police Benevolent Association [hereinafter "PBA"] attorney Thomas Troetti, Esq. regarding their strategy and defense with respect to the charges preferred by Murphy.

41. In fact personal effects of Plaintiff including the aforesaid notes which had been secured in Plaintiff's locker, were accessed by Defendants Doe and/or Roe and upon information and belief as a proximate result Defendants Carroll and/or Murphy and/or Capio and/or Schaller and/or the attorney who is to prosecute Plaintiff's disciplinary charges have gained improper access to privileged information which will materially disadvantage Plaintiff's defense.

42. At the time of the break-in to Plaintiff's locker, it was established practice in the Department that:

　　　a. Police officers had an absolute expectation of privacy in their departmental lockers,

b. Officers routinely kept secure in their lockers a wide variety of personal and very private property including their wallets, bank statements, and personal notes,

c. Whenever it was determined that an officer was securing his/her locker with what the Department deemed to be an "unauthorized" lock, that officer would be given a written notice to that effect and be accorded forty-eight hours advance warning that the "unauthorized" lock would be cut if not timely replaced with an "authorized" lock.

d. Despite the departmental purported requirement that lockers be secured with "authorized" combination locks, officers routinely secured their lockers with "unauthorized" combination and/or key locks as a result of which absolutely no remedial action is taken against them-- except with respect to Plaintiff.

43. On or about September 16, 1994, and with a view towards covering up the true reason for the locker break-in, Defendant Schaller wrote to Plaintiff and advised:

"Your Department locker was found secured with an unauthorized lock. This lock was cut off and removed."

44. At the time Schaller wrote the memorandum referenced in the preceding paragraph he, upon information and belief, knew that:

13

a. Departmental policy and practice required the giving of forty-eight hours written notice to a member of the department before the removal of an unauthorized lock,

b. That many members of the Department have used and continue to use unauthorized locks to secure their lockers with impunity, and

c. That Plaintiff's lock was cut off and destroyed in order to facilitate an illegal search and seizure of private property contained in Plaintiff's locker. ...

45. Shortly after Plaintiff's locker was broken into, Plaintiff's PBA attorney was contacted by the City's disciplinary prosecutor and advised that he wanted to schedule Plaintiff's disciplinary hearing either on or about the date of Plaintiff's then scheduled wedding or during Plaintiff's then scheduled honeymoon. That proposed schedule, which upon information and belief comprised an act in furtherance of the municipal Defendants' malicious, spiteful and arbitrary plan to deny Plaintiff his rights, was rejected as outrageous by PBA counsel.

46. At the present time upon information and belief the City's disciplinary prosecutor intends to proceed with the disciplinary as soon as possible even though:

a. At that disciplinary evidence unlawfully taken from Plaintiff's locker may be either introduced and/or utilized to assist the prosecution, and impair Plaintiff's defense,

b. Information obtained by Defendants by reason of their unlawful violation of Plaintiff's attorney-client privilege may be utilized to assist the prosecution and hinder the defense, and

c. The conduct of the disciplinary will be a sham since Carroll has already determined to terminate Plaintiff's employment.

47. As a proximate result of Defendants' conduct Plaintiff has been embarrassed, humiliated, shamed, made anxious, suffered severe emotional upset, been publicly ridiculed, been publicly degraded, has been unnecessarily and for months been placed in imminent fear of potential serious bodily injury, been intimidated, been deliberately put at risk of potential serious bodily injury and/or death by reason of his work assignment, without a firearm been deprived of his right to gainful employment and/or to freely earn a living, and otherwise been made sick.

## AS AND FOR A FIRST CLAIM

48. Repeats and realleges as if fully set forth the allegations of paragraphs 39-47 inclusive.

49. Under the premises the conspiring Defendants violated Plaintiff's rights as guaranteed by reason of the Fourth Amendment to the United States Constitution.

15

## AS AND FOR A SECOND CLAIM

50. Repeats and realleges as if fully set forth the allegations of paragraph "39".

51. Under the premises Plaintiff was deprived of property without due process in violation of the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A THIRD CLAIM

52. Repeats and realleges as if fully set forth the allegations of paragraphs 11-16, 26-32, and 47.

53. Under the premises the preferral and prosecution of the subject disciplinary charges against Plaintiff constitutes and unlawful selective prosecution violative of the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A FOURTH CLAIM

54. Repeats and realleges as if fully set forth the allegations of paragraphs 11-16, 26-32, and 47.

55. Under the premises Plaintiff has been denied substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A FIFTH CLAIM

56. Repeats and realleges as if fully set forth the allegations of paragraphs 30, 33, 36, and 47.

57. Under the premises Plaintiff has been denied property, to wit income during the thirty day payless

suspension, in violation of his right to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A SIXTH CLAIM

58. Repeats and realleges as if fully set forth the allegations of paragraphs 17-18, 20-22, 24-5, and 47.

59. Under the premises Plaintiff has been denied his right to liberty as guaranteed by the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A SEVENTH CLAIM

60. Repeats and realleges as if fully set forth the allegations of paragraphs 19, 20, 23, and 47.

61. Under the premises Plaintiff was denied substantive due process as guaranteed him by reason of the Fourteenth Amendment to the United States Constitution.

## AS AND FOR AN EIGHTH CLAIM

62. Repeats and realleges as if fully set forth the allegations of paragraphs 33-8, and 47.

63. Under the premises Plaintiff was denied substantive due process as guaranteed him by reason of the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A NINTH CLAIM

64. Repeats and realleges as if fully set forth the allegations of paragraphs 33-8, and 47.

65. Under the premises Plaintiff was denied his right to liberty as guaranteed him by reason of the Fourteenth Amendment to the United States Constitution.

WHEREFORE judgment is respectfully demanded:

1. On the First and Second Claims awarding as against Defendants John Doe, Jane Roe, Carroll, Schaller, Murphy and City such compensatory damages as the jury may determine and, as against each of such Defendants except the City, such punitive damages as the jury in its discretion may impose.

2. On the Third and Fourth Claims awarding as against Defendants John Doe, Jane Roe, Carroll, Schaller, Murphy, Capio and City such compensatory damages as the jury may determine and, as against each of such Defendants except the City, such punitive damages as the jury in its discretion may impose.

3. On the Fifth Claim awarding as against Defendants Carroll, Murphy and City such compensatory damages as the jury may determine and, as against Carroll and Murphy, such punitive damages as the jury in its discretion may impose.

4. On the Sixth and Seventh Claims, awarding as against Defendant Murphy such compensatory and punitive damages as the jury may determine and/or impose.

18

5. On the Eight and Ninth Claims awarding as against Defendants Carroll, Murphy and City such compensatory damages as the jury may determine and, as against Defendants Carroll and Murphy, such punitive damages as the jury in its discretion may impose.

6. Declaring that police officers employed by the City of New Rochelle have an expectation of privacy in their departmental lockers, declaring that the break-in to Plaintiff's locker violated his rights as guaranteed by the Fourth Amendment, and permanently enjoining the municipal defendants from prospectively breaking into any such lockers.

7. Permanently enjoining the conduct of a disciplinary hearing upon the disciplinary charges at issue in this action.

8. Permanently enjoining the municipal defendants from selectively prosecuting Plaintiff and/or any other member of the City police department.

9. Permanently enjoining the municipal defendants from requiring Plaintiff and/or any other sworn member of the City Police Department to engage in police duties in uniform but without a firearm, badge and/or identification card.

10. Permanently enjoining the municipal defendants from violating Plaintiff's rights as guaranteed by reason of Section 208-d of the New York State General Municipal Law.

11. Ordering Defendant City to expunge from Plaintiff's personnel records all evidence of the disciplinary proceeding at issue in this action.

12. Declaring null and void Carroll's June 24, 1994, suspension of Plaintiff without pay and ordering that Plaintiff be paid the moneys denied him by reason of that suspension along with all other benefits, rights, and entitlements which he was concomitantly deprived of by reason of said suspension.

13. Awarding Plaintiff reasonable attorney's fees and costs, and

14. Awarding such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
       November 12, 1994

                              LOVETT & GOULD, ESQS.
                              By: _____
                                  Jonathan Lovett (4854)
                              Attorneys for Plaintiff
                              11 Martine Avenue
                              White Plains, N.Y. 10606
                              914-428-8401

20