1

```
 1
 2    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 3    ------------------------------------X
 4    JOSEPH POGGIOLI, JR.,
 5                    Plaintiff,
                                            Civ. No.:
 6          -against-                       07/6674
 7    PATRICK J. CARROLL,
      INDIVIDUALLY, AND THE CITY OF
 8    NEW ROCHELLE, NEW YORK,
 9                    Defendants.
      ------------------------------------X
10
11                  3 Gannett Drive
                    White Plains, New York
12                  October 30, 2007
                    10:17 AM
13
14
15
16
17
18
19            Examination before Trial of Plaintiff,
20    JOSEPH POGGIOLI, held pursuant to Order, at the
21    above time and place, before Susie Cabanas-Diaz, a
22    Notary Public of the State of New York.
23
24
25
```

2

1
2  A P P E A R A N C E S :
3           LOVETT & GOULD, LLP
            Attorneys for Plaintiff
4           222 Bloomingdale Road
            White Plains, New York  10605-1513
5           BY: DRITA NICAJ, ESQ.
            Email: dnicaj@lovett-gould.com
6
7           WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
            Attorneys for Defendants
8           3 Gannett Drive
            White Plains, New York  10604-3407
9           BY: PETER A. MEISELS, ESQ.
            Email: peter.meisels@wilsonelser.com
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2      IT IS HEREBY STIPULATED AND AGREED, by

3  and between the attorneys for the respective

4  parties hereto, that this examination may be

5  sworn to before any Notary Public.

6

7      IT IS FURTHER STIPULATED AND AGREED that

8  the sealing and filing of the said examination

9  shall be waived.

10

11     IT IS FURTHER STIPULATED AND AGREED that

12  all objections to questions except as to form

13  shall be reserved for trial.

14

15

16

17

18

19

20

21

22

23

24

25

4

1
2          JOSEPH POGGIOLI, a
3  Plaintiff, having been first duly sworn by Susie
4  Cabanas-Diaz, a Notary Public of the State of New
5  York, and stating his address as 25 Wyndham Lane,
6  Carmel, New York 10512, was examined and testified
7  as follows:
8              MS. NICAJ:  My name is Drita Nicaj.  I
9          represent Joseph Poggioli.  I would like
10         Mr. Poggioli to have an opportunity to review and
11         correct his deposition transcript once the
12         transcript is available.  Will you be providing
13         that, Mr. Meisels?
14             MR. MEISELS:  No.
15             MS. NICAJ:  Okay.  Then we'll a
16         request a copy.
17             MR. MEISELS:  And we're requesting a copy
18         as well.
19  EXAMINATION BY
20  MR. MEISELS:
21      Q   Mr. Poggioli, my name is Peter Meisels and
22  I'm going to be asking you some questions about your
23  complaint in this matter.  If they're not clear,
24  please tell me and I'll be happy to rephrase them.
25  Fair enough?

POGGIOLI

1
2       A    Yes.
3       Q    I'm going to show you what's been
4  premarked as Defendants' A for identification and
5  ask you to review that document and then tell me if
6  you can identify it.
7       (Defendants' Exhibit A, previously marked for
8                     identification.)
9                     (Witness Perusing)
10      A    I haven't read each word but it looks like
11 a copy of my complaint.  If you want me to read each
12 word --
13      Q    Well, let me ask you a follow-up question
14 before --
15      A    Can I just add something?  I never saw
16 these last two pages before.
17      Q    Fair enough.  In reference to the first
18 five pages of the document, have you ever seen those
19 first five pages before today?
20      A    Yes.
21      Q    At the time that you saw them prior to
22 today, did you review them?
23      A    Yes.
24      Q    And at the time that you reviewed them,
25 was it your impression that everything in that

6

1                           POGGIOLI

2  document was accurate?

3           MS. NICAJ:  Objection.  You can answer.

4      A    Like I said, I didn't read each word.  If

5  you want me to read each word, I can do that but it

6  looks like it is, yes.

7      Q    Okay.  Fair enough.  Where are you

8  residing now?

9      A    In Carmel, New York.

10     Q    The same address as you've had for the

11 last several years?

12     A    Yes.

13     Q    How long have you lived there?

14     A    About six years.

15     Q    Okay.  And what is your actual address?

16     A    25 Wyndham Lane, Carmel, New York 10512.

17     Q    And how are you presently employed?

18     A    I'm not.

19     Q    And when were you last employed?

20     A    July 20, 2007.

21     Q    Are you presently receiving a pension?

22     A    Yes.

23     Q    And is that in connection with your prior

24 employment as a police officer?

25     A    Yes.

16

1                        POGGIOLI

2   down.

3        Q    Could we move on to Paragraph 9 and

4   particularly I'm referring to the first sentence of

5   Paragraph 9 where it says, "On July 20, 2007,

6   Respondents in writing terminated Plaintiff's

7   employment, a termination that was motivated in

8   whole and/or substantial respect by:  A) Plaintiff's

9   2006 filing and/or the substantive allegations

10  contained in the complaint."

11            Now your complaint refers to a 2006

12  filing.  Are you referencing a lawsuit that you

13  brought in 2006?

14       A    Yes.

15       Q    Okay.  And what is the basis for your

16  belief that your termination was motivated as a

17  result of your filing that 2006 lawsuit?

18       A    It's obvious that the police commissioner

19  wasn't happy that I filed another federal complaint

20  against him because I had done so previously in 1994

21  and prevailed.  He always thought that I was a thorn

22  in his side being the PBA president previously and

23  this was just a motivation on his part.

24       Q    And when you say that it was obvious that

25  he wasn't happy, okay, how did that manifest itself?

18

1       POGGIOLI

2  didn't have a good light on the commissioner.

3       Q    And am I correct that your term of office

4  as PBA president expired on December 31st, 2003?

5       A    I think that was the year, yes, sir.

6       Q    Referring back to Paragraph 9 on Page

7  3 of your complaint, in reference to

8  subparagraph B which reads, "Evidence of corruption

9  rampant in the city government including its court

10 and police department as adduced by Plaintiff during

11 the disciplinary proceedings as presided over by

12 Ponzini."  You see that?

13      A    Yes, sir.

14      Q    What evidence of corruption in city

15 government was disclosed at the disciplinary

16 proceeding to which you refer to here?

17           MS. NICAJ:  Objection.  You can answer.

18      A    There were numerous incidents that I

19 mentioned during the -- that was mentioned during

20 the trial of theft from departmental employees,

21 criminal mischief and they were mentioned in the

22 trial itself.

23      Q    Okay.  Now other than theft and criminal

24 mischief, as you sit here today do you recall any

25 other evidence of corruption in city government that

```
 1                        POGGIOLI
 2   was disclosed during your disciplinary hearing?
 3       A    Yes, there was mention of the -- of city
 4   court.
 5       Q    And do you recall what was mentioned about
 6   the city court?
 7       A    That was client/attorney communication.
 8       Q    Okay.  Now I'm not asking you about the
 9   substance of any attorney/client communication.  I
10   am asking you about what was disclosed on the record
11   at the disciplinary hearing.  Was anything in
12   reference to the city court disclosed on the record
13   at the disciplinary hearing?
14       A    Yes.
15       Q    Could you tell me what that was?
16       A    Involving the city marshal.
17       Q    Anything else that you recall?
18       A    Involving the employees of the court.
19       Q    Do you recall which employees?
20       A    Again, this is information that I had with
21   my attorney.
22            MS. NICAJ:  It's whatever you communicated
23       with your attorney, do not disclose to
24       Mr. Meisels, but he, I think, is asking what, if
25       any, information, did you learn through the
```

POGGIOLI

1  
2       disciplinary proceeding against you about this
3       city court. You understand?
4              THE WITNESS: Yes.
5              MS. NICAJ: At the hearing itself, okay?
6              THE WITNESS: She explained it.
7              MR. MEISELS: You got it? Okay. Good.
8        A    Thank you. Yes, that there was employees
9   involved in use of drugs and larceny in the city
10  court.
11       Q    Do you know whether or not the employees
12  in the city court are employed by the State of New
13  York or the city of New Rochelle or some other
14  entity?
15       A    I know that some of the employees are
16  employees of the State of New York and some of them
17  are employees of the city of New Rochelle. I don't
18  know which ones, though.
19       Q    In reference to the persons who were
20  alleged to have used drugs, do you know whether
21  those persons were state employees or city
22  employees?
23       A    I'm sorry, I don't know.
24       Q    Okay. In reference to the persons who
25  allegedly committed a larceny, do you know whether

1                      POGGIOLI

2  those persons were state employees or city

3  employees?

4       A    I'm sorry, I don't know.

5       Q    Earlier you had mentioned that during the

6  course of your disciplinary [sic], you became aware

7  that there had been theft in city government, is

8  that correct?

9            MS. NICAJ:  Objection.  You can answer.

10      A    Yes.

11      Q    Was that the theft -- withdrawn.

12           Is that theft the same incident that

13 you just referenced concerning a larceny in the city

14 court?

15      A    Could you say that again, please.

16      Q    Sure.  The theft that you mentioned

17 earlier, is that the same incident that you just

18 referenced as a larceny and occurring in the city

19 court?

20      A    The theft and the larceny pertaining to

21 the city court?

22      Q    Right.  Are they the same?

23      A    Yes.

24      Q    You had mentioned criminal mischief

25 earlier in your testimony this morning.  Do you have

```
 1                     POGGIOLI
 2     A    No, I'm sorry.
 3     Q    Do you know if it occurred in the 1990s?
 4     A    I don't know.  Sorry.
 5     Q    As far as you know is Detective Torres
 6  still employed by the New Rochelle police
 7  department?
 8     A    Yes, he is.
 9     Q    What is the basis for your information
10  about this incident concerning Detective Torres?
11     A    Well, like I said, when something happens
12  in the police department everybody knows about it.
13     Q    Okay, so it's word of mouth?
14     A    Word of mouth.
15     Q    In reference --
16     A    Can I just add something?
17     Q    Sure.
18     A    There were others.  I just can't think of
19  them right now.
20     Q    Okay.  If you think of them in the course
21  of the deposition, stop me and inform us.
22     A    Okay.  Thank you.
23     Q    Mr. Poggioli, were you ever offered a
24  suspension in satisfaction of the charges that
25  ultimately were heard in your disciplinary hearing?
```

36

POGGIOLI

A    I was offered days -- I'm sorry. I was offered to lose days' pay, yes.

Q    Do you recall how many days that was?

A    I think it was 30 days but I don't know if it was 30 calendar days or 30 paid days.

Q    It would be one or the other?

A    Yes.

Q    And am I correct that you rejected that proposal?

A    There was more to it.

Q    Okay. What else was involved?

A    They also wanted for me to be suspended from off duty work for six months.

Q    So am I correct that the offer was that you would lose 30 days either pay or calendar days plus be suspended from off duty employment for six months?

A    I think it was -- yes, but I think it was a 30-day suspension now that I -- I think it was 30 days' suspension. Suspended for 30 days.

Q    So it would be a 30 day suspension plus loss of off duty employment for six months?

A    Yes.

Q    And when the term off duty employment is

1                    POGGIOLI

2   used, does that refer to the special duty

3   employment?

4        A    Yes.

5        Q    And is that the special duty employment

6   that you received through the department?

7        A    Yes.

8        Q    And am I correct that you rejected that

9   proposal?

10       A    Yes.

11       Q    Was there a reason that you rejected it?

12       A    I wasn't guilty.

13       Q    Let's go back to Paragraph 10 of the

14  complaint where we -- withdrawn.

15            Going to back to Paragraph 10 of the

16  complaint where it references, "Members of the

17  department who wholesale violated and continue to

18  violate the federal civil rights of the only police

19  officer of Middle Eastern descent."

20            Can you identify which police officer

21  is responsible for violating the federal civil

22  rights of the only police officer of Middle Eastern

23  descent?

24       A    That's attorney/client communication.

25       Q    Other than communications that you've had

38

1                       POGGIOLI

2  with your attorneys, do you have any information

3  about the identities of police officers who violated

4  the civil rights of the only police officer of

5  Middle Eastern descent?

6       A    Besides my communications with my

7  attorney?

8       Q    Yes.

9       A    No.

10      Q    So am I correct that your communications

11  with your attorney is the sole basis for your belief

12  concerning this incident?

13      A    Yes.

14      Q    Okay.  Do you know who -- withdrawn.

15           Can you identify the officer who

16  allegedly is the only police officer of middle

17  eastern descent?

18      A    P.O. Ali [sic].  I think it's A-L-I, the

19  spelling of his name.  I don't know.

20           MS. NICAJ:  You should know it.

21           MR. MEISELS:  But I'm not under oath.  I

22      can't testify.

23      A    You know who I mean, though.

24      Q    Okay.  So your best understanding of his

25  name is --

56

POGGIOLI

1
2      A     I don't know.
3             MR. MEISELS:  No further questions subject
4      to our stipulation about damages.
5             MS. NICAJ:  Sure.
6             THE WITNESS:  Thank you.
7             MR. MEISELS:  Thank you.
8                  (Time Noted:  11:47 AM)
9                    _____
10                      JOSEPH POGGIOLI
11
12
13   Subscribed and sworn to before me this _____ day
14   of _____ 2007.
15   _____, Notary Public.
16
17
18
19
20
21
22
23
24
25

57

1                    POGGIOLI

2                  I N D E X

3  WITNESS

4  JOSEPH POGGIOLI

5  EXAMINATION BY

6  MR. MEISELS                          4

7

8              E X H I B I T S

9

   DEFENDANTS'                       PAGE
10

11 A - Previously marked               5

12

13

14

15

16

17

18

19 Mr. Meisels has retained all exhibits.

20

21

22

23

24

25

```
                                                              58
 1                         POGGIOLI

 2              C E R T I F I C A T I O N

 3

 4         I, SUSIE CABANAS-DIAZ, a Court Reporter

 5   and Notary Public within and for the State

 6   of New York, do hereby certify:

 7         That the witness whose deposition

 8   is herein before set forth, was duly sworn

 9   by me, and that the within transcript is a

10   true record of the testimony given by such

11   witness.

12         I further certify that I am not

13   related to any of the parties to this action

14   by blood or marriage, and that I am in no way

15   interested in the outcome of this matter.

16         IN WITNESS WHEREOF, I have hereunto

17   set my hand this 1st day of NOVEMBER, 2007.

18

19                    [signature]
20                    _____

21                        SUSIE CABANAS-DIAZ
```