COPY

STATE OF NEW YORK

CITY OF NEW ROCHELLE

-------------------------------------x

In the Matter of the Disciplinary

Charges Preferred by,

CAPTAIN KEVIN KEALY

        Charging Party,


  -against-


POLICE OFFICER JOSEPH POGGIOLI,


       Charged Party.

-------------------------------------x



       515 North Avenue

       New Rochelle, New York

       March 9, 2006



BEFORE:  ROBERT PONZINI

       Hearing Officer




       DOCUSERVE

    388 Tarrytown Road

  White Plains, New York 10607

      (914) 949-4545

```
 1

 2    APPEARANCES:

 3

 4

 5

 6

 7            LAW OFFICE OF VINCENT TOOMEY

 8            Attorneys for the City

 9            3000 Marcus Avenue

10            Lake Success, New York 11042

11            BY:  KEVIN KEARON, ESQ.,

12                    Of Counsel

13            BY: THOMAS J. MARCOLINE, ESQ.

14

15

16            LOVETT & GOULD, LLP

17            Attorneys for the Charged Party

18            222 Bloomingdale Road

19            White Plains, New York 10605

20            BY: JONATHAN LOVETT, ESQ.

21

22

23    ALSO PRESENT:

24

25    Edward Hayes
```

1                    KEVIN KEALY

2          MR. KEARON:  Nothing further.

3          THE HEARING OFFICER:  We'll take

4      a short recess.

5          (Short recess taken.)

6          THE HEARING OFFICER:  We're back

7      on the record.  Does the City have any

8      additional witnesses?

9          MR. KEARON:  Yes, the City calls

10     Police Officer Joseph Poggioli.

11     JOSEPH POGGIOLI called as a witness on

12     behalf of the Charging Party, having been

13     first duly sworn by the Hearing Officer,

14     testified as follows:

15          THE HEARING OFFICER:  Can I have

16     your full name and your business

17     address for the record.

18          THE WITNESS:  Police Officer

19     Joseph Poggioli, Jr., 475 North

20     Avenue, New Rochelle.

21          THE HEARING OFFICER:  Officer

22     Poggioli, you've been present for the

23     testimony.  You've heard my

24     instructions.  If you have any

25     questions, don't hesitate to ask me

KEVIN KEALY

1

2      during the course of the proceedings.

3           You may inquire.

4   DIRECT EXAMINATION

5   BY MR. KEARON:

6      Q.    Good afternoon, Officer.

7   Directing your attention to April 20,

8   2005, did you work a private duty

9   assignment on Webster Avenue in the City

10  of New Rochelle that day?

11     A.    Yes.

12     Q.    Did there come a point when you

13  arrived at that location on that job site

14  for the first time?

15     A.    Yes.

16     Q.    Did there come a point,

17  thereafter, at the end of that private

18  duty assignment that you returned to

19  police headquarters?

20     A.    Yes.

21     Q.    Did you return to police

22  headquarters at any time in the interim

23  between when you first arrived at the job

24  site and the time you returned back to

25  police headquarters to sign off for that

```
1                   KEVIN KEALY
2    job?
3         A.    No, I don't think so.
4         Q.    Prior to reporting to that job
5    site, did you enter police headquarters?
6         A.    Yes.
7         Q.    When you entered police
8    headquarters were you already in uniform
9    or were you still in civilian clothing?
10        A.    I was in civilian clothing.
11        Q.    Did you get changed in your
12   uniform at police headquarters?
13        A.    Yes.
14        Q.    When you left for the job site,
15   did you present yourself or attempt to
16   present yourself to the desk officer to
17   sign yourself out?
18             MR. LOVETT:  Objection as to
19        form.  It is two questions.
20             MR. KEARON:  I'll rephrase the
21        question.
22        Q.    Did you present yourself to the
23   desk officer to sign out to that
24   private-duty job?
25        A.    I don't understand what you mean
```

KEVIN KEALY

1

2      by "present".

3          Q.    Are you familiar with the

4      private-duty log that is supposed to be

5      signed in and out of by an officer going

6      to a private-duty job?

7          A.    Yes.

8          Q.    On the 20th of April, were you

9      familiar with that log?

10         A.    Yes.

11         Q.    Did you know that you are

12     supposed to sign yourself out to a job and

13     then when you return from the job sign

14     yourself back in that log?

15         A.    Yes.

16         Q.    Did you sign yourself out to

17     that job that day?

18         A.    Yes.

19         Q.    Was that log in the vicinity of

20     the desk officer's desk at the time you

21     did so?

22         A.    It was nearby.

23         Q.    Was there a desk officer present

24     at the time you signed yourself out?

25         A.    I don't recall.

KEVIN KEALY

1

2    Q.    Were you aware that there was an

3  obligation for you to present yourself

4  before a desk officer before signing out

5  for your off-duty assignment?

6    A.    No one does it.

7    Q.    Were you aware that there was a

8  rule and/or regulation that required you

9  to do so whether that rule or regulation

10 was followed by anyone else or not?

11   A.    Yes, but it is not a rule that

12 is followed.

13        THE HEARING OFFICER:  The answer

14    is yes. He knows that there is a rule.

15   Q.    I'm sorry if I misunderstood

16 your answer.  Was there someone at the

17 desk when you signed out that day or not?

18        MR. LOVETT:  Objection.

19        THE HEARING OFFICER:  He said he

20    didn't know.

21   Q.    You have no idea one way or

22 another whether there was a desk officer

23 present when you signed out?

24        MR. LOVETT:  Objection.  Asked

25    three times.

KEVIN KEALY

1

2        THE HEARING OFFICER:  Overruled.

3     I'll give him one more chance.  It is

4     a hostile witness.

5     A.    I don't remember.

6     Q.    Would you please take a look at

7  a still excerpt and I will show it to

8  counsel before I show it to the witness

9  from Charging Party 10 in evidence.

10        Would you take a look at that

11  video screen.  Would you tell us if that

12  is you depicted in the lower left-hand

13  corner of that video screen?

14     A.    I can't tell.

15     Q.    I'm going to show you not a

16  single static excerpt, but the video

17  itself and ask you to watch the video and

18  then tell me if the individual depicted

19  walking in in that video is you or not?

20        MR. KEARON:  For the record I'm

21     going to play what I believe to be the

22     entire portion of the individual that

23     depicts the individual that has been

24     previously identified as Officer

25     Poggioli from start to finish.

KEVIN KEALY

1
2          If you need to see it a second
3     time, tell me.
4               (Whereupon, the video was
5     played.)
6          Q.    Did you have an opportunity to
7     look at that excerpt that I just showed
8     you?
9          A.    Yes, I saw it.
10         Q.    Are you able to tell me whether
11    or not that individual is you?
12         A.    No, I can't.
13         Q.    I'll back it up to a different
14    point in the video and show you another
15    still from that video.  You see the blue
16    jeans being worn by that individual?
17         A.    Yes.
18         Q.    Do you own a pair of blue jeans
19    that look like that?
20         A.    I own a pair of blue jeans.
21         Q.    Do you see the white shoes or
22    sneakers being worn by that individual?
23         A.    I don't know if those are shoes
24    or sneakers.
25         Q.    That's why I proposed both.  Do

KEVIN KEALY

1

2 you see the shoes or sneakers being worn,

3 color white, or at least partial white by

4 that individual?

5       MR. LOVETT:  Objection as to

6    form.

7       THE HEARING OFFICER:  Overruled.

8    A.   Barely.

9    Q.   Do you have white shoes or

10 sneakers or did you own white shoes or

11 sneakers as of April 2005?

12    A.   No.

13       MR. LOVETT:  Objection.  That's

14    three questions in one.

15       THE HEARING OFFICER:  Well, I'm

16    going to allow it.  Overruled.

17    A.   No, I don't own a pair of white

18 sneakers or shoes.

19       MR. KEARON:  I have nothing

20    further on the video.

21    Q.   Would you take a look at what

22 has been marked as Charging Party 12 in

23 evidence, please.  I'm directing your

24 attention, please, to the third entry from

25 the bottom, the left side, the name

1                    KEVIN KEALY

2    Poggioli appears.  Do you see where I'm

3    indicating?

4        A.    Yes.

5        Q.    Was the name Poggioli written by

6    you?

7        A.    Yes.

8        Q.    Do you see next to that under

9    assignment, the assignment column it says

10   Coligni and Webster.  Was Coligni and

11   Webster written by you?

12       A.    Yes.

13       Q.    Do you see where it says job

14   hours, 1200 to 1600 hours.  Was that entry

15   made by you?

16       A.    Yes.

17       Q.    Do you see under time out, it

18   says 12 o'clock.  Was that entry made by

19   you?

20       A.    That entry was made by me.

21       Q.    Under time in, it says 1530.

22   Was that entry made by you?

23       A.    Yes.

24       Q.    Under radio number, it has radio

25   number 116.  Was that entry made by you?

1                    KEVIN KEALY

2        A.    Yes.

3        Q.    Did you make all of the entries

4    we just discussed at basically the same

5    time?

6        A.    Yes.

7              MR. LOVETT:  Objection.

8              THE HEARING OFFICER:  Overruled.

9        Q.    When did you make those entries,

10   when you were signing out to the job or

11   signing back into the job?

12             MR. LOVETT:  Objection.  He said

13        the last question, which was absurd,

14        he made all the entries at the same

15        time.  So he signed out when he signed

16        in according to Mr. Kearon.

17             THE HEARING OFFICER:  That's

18        what the question was, but

19        unfortunately he also said yes.

20             MR. KEARON:  Let me please

21        clarify the question.

22        Q.    At what hour of the day did you

23   make those entries?

24             MR. LOVETT:  Objection.  Asked

25        and answered.

1          KEVIN KEALY

2          THE HEARING OFFICER:  I think we

3    have to clarify the record here.

4          When you say "entries," the

5    specific entry, the "in" or the "out"?

6    I'm confused.

7          MR. KEARON:  The testimony was

8    all the entries were made sequentially

9    or all at the same time?

10         MR. LOVETT:  He did not say

11   that.

12         THE HEARING OFFICER:  He did not

13   say that.

14         MR. KEARON:  I'll clarify it.

15   Q.    Did you make these entries

16   basically one after another or at the same

17   time?

18         MR. LOVETT:  Objection.

19         MR. KEARON:  I'll rephrase it.

20   Q.    Please describe the

21   circumstances under which you've made the

22   various entries under which we just

23   discussed?

24   A.    When I sign out for an off-duty

25   job, that's the form we use.

KEVIN KEALY

1

2      Q.    Did you make those entries at

3  the time you signed out for this job?

4            MR. LOVETT:  Objection.  Same

5      competency.  He couldn't have made all

6      of the entries when he signed out.

7            THE HEARING OFFICER:  At the

8      risk of interjecting --

9            MR. KEARON:  I apologize.

10     Q.    With the exception of the time

11  in entry which indicates 1530, setting

12  that one aside, did you make the other

13  entries at the time that you signed out?

14     A.    With the exception of the 1530?

15     Q.    Yes.

16     A.    Yes.

17     Q.    When did you make the 1530

18  entry?

19     A.    When I arrived back at police

20  headquarters.

21     Q.    Do you see under supervisor out

22  there is no entry in the column next to

23  your name?

24     A.    Yes.

25     Q.    Does the absence of initials or

1                KEVIN KEALY

2    marking by a supervisor in any way refresh

3    your recollection as to anyone who was

4    present at the desk at the time you signed

5    out?

6       A.    No.

7       Q.    Are you certain that you didn't

8    make all of these entries at the time for

9    the first time when you signed back in

10   from the job?

11          MR. LOVETT:  Objection.  Asked

12       and answered.

13          THE HEARING OFFICER:  Overruled.

14       He is asking it a little differently.

15          MR. LOVETT:  It is the same

16       thing.

17          THE HEARING OFFICER:  No.  It is

18       overruled.

19       A.    I'm sorry.  Can you repeat that?

20       Q.    Is there any possibility after

21   having reviewed this record now that

22   you're mistaken; that in fact all of these

23   entries were made at a single point in

24   time when you signed back into the

25   department from the job?

KEVIN KEALY

1

2    MR. LOVETT:  Objection as to

3    form and it is totally hypothetical.

4    Is there any possibility?  What is

5    that supposed to mean.

6    THE HEARING OFFICER:  Overruled.

7    It is a hostile witness.

8    MR. LOVETT:  I'm not talking

9    about hostility.  I'm talking about

10    competency.

11    THE HEARING OFFICER:  I am going

12    to allow the question.

13    A.    You want to know if I signed it

14    all at the same time?

15    Q.    Yes.

16    A.    No, I didn't sign it at the same

17    time.

18    Q.    Would you take a look at Charged

19    Party's B in evidence.

20    A.    Yes.

21    Q.    What do you recognize it to be?

22    A.    It is not a complete overtime

23    slip.  Something is missing.

24    Q.    Tell me what it is and tell me

25    what is missing?

KEVIN KEALY

1

2      A.    I can't tell you what is missing

3    if I don't see it.

4      Q.    Tell me generally speaking what

5    kind of document are we looking at?

6      A.    It looks like an overtime slip.

7      Q.    Do you recognize any writing on

8    that document made by you?

9      A.    It is not an overtime slip I

10   would have signed.

11     Q.    Do you see the words written by

12   hand down here P.O -- I can't read the

13   letters -- Poggioli, Jr.?

14     A.    Yes.

15     Q.    Do you see that signature?

16     A.    It appears to be.

17     Q.    Do you have any reason to

18   believe it is not?

19     A.    That overtime slip does not look

20   like a proper overtime slip.

21     Q.    In what way does it appear to

22   not be an overtime slip?

23     A.    Part of the lettering on top is

24   missing.

25     Q.    What portion?

1                    KEVIN KEALY

2        A.    The whole top line, half of it

3    is missing.

4        Q.    Do you see the next printed word

5    officer, someone has handwritten Joseph A.

6    Poggioli, Jr.?

7        A.    Yes.

8        Q.    Is that your handwriting?

9        A.    It appears to be.

10        Q.    Is there anything on this

11    document written in hand that appears not

12    to be your handwriting?

13        A.    It doesn't look like a proper

14    overtime slip.

15        Q.    That's not my question.  Are all

16    the handwritten markings on this --

17    withdrawn.

18             Do you remember preparing an

19    overtime slip in connection with your

20    April 20th private-duty assignment?

21        A.    Yes.

22        Q.    Is this it?

23        A.    No.

24        Q.    Do you have a copy of the slip

25    that you did prepare?

1                    KEVIN KEALY

2        A.    No.

3        Q.    In what way, if this is not it,

4    does it differ from the one that you did

5    prepare?

6        A.    The top line is -- some of the

7    parts is missing.  I don't think I would

8    have filled out an overtime slip like

9    that.

10       Q.    Are you referring to the line

11   that ends in other assignments up at top?

12       A.    I'm referring to the top line.

13       Q.    The line I'm pointing to right

14   now (indicating)?

15       A.    Yes, half the words are missing.

16       Q.    Setting aside the fact that this

17   copy of this overtime slip appears to have

18   cutoff a portion of the top line on this

19   slip, do you have any reason to believe

20   that any of these markings were made by

21   anyone other than you?

22       A.    I don't know.

23       Q.    Meaning that you have no reason

24   to believe that anyone else did it?

25       A.    The overtime slip is not a

1              KEVIN KEALY

2    proper New Rochelle overtime slip.  Half

3    of the front line is missing.

4        Q.    That's not my question.  Did you

5    fill this slip out?

6        A.    Not that slip.

7        Q.    Is this a copy of the slip that

8    you filled out?

9        A.    I don't know.

10            MR. KEARON:  Can I have the

11        following document marked as the next

12        Exhibit, Charging Party 22.

13            (Whereupon, Charging Party's 22

14        was marked for identification.)

15        Q.    Would you take a look at what

16    has been marked as Charging Party 22 for

17    identification.  Tell me if you recognize

18    it please?

19        A.    It looks like a New Rochelle

20    Police Department overtime slip.

21        Q.    Is it the overtime slip that you

22    filled out in connection with your --

23            MR. LOVETT:  Objection.  It is

24        obviously a photocopy.  It is not an

25        original of anything.  It bears some

KEVIN KEALY

1

2      kind of stamp on it that doesn't --

3            MR. KEARON:  Take another look.

4      I don't think it is obviously a

5      photocopy.  I think it has an original

6      ink mark on it.

7            MR. LOVETT:  It is not obvious

8      to me.  It says "Special PDP 148.3"

9      on it.

10           Q.    Setting aside the markings in

11     the middle of this Charging Party 22 for

12     identification that reads Special PDP

13     148.3, ignoring that section, is that

14     otherwise the overtime slip that you

15     prepared in connection with your

16     assignment that day?

17           MR. LOVETT:  Objection.

18           It has got an exhibit tab line

19     on it.  It couldn't possibly have an

20     exhibit tab line on it on April 20th,

21     '05.

22           THE HEARING OFFICER:  I'll take

23     it.  Overruled.

24           A.    That looks like a copy.

25           Q.    Is that a true copy of the

KEVIN KEALY

1

2    overtime slip that you filled out that

3    day?

4        A.    I couldn't tell.

5        Q.    Take a moment and review the

6    information that appears on that slip.  Is

7    the information accurate as to what you

8    reported in connection with your request

9    for payment for overtime work on the 20th

10   of April 2005?

11       A.    I couldn't tell you unless I see

12   the original.

13       Q.    Your name is Joseph A. Poggioli,

14   Jr., correct?

15       A.    Yes.

16       Q.    Your shield number is 5801,

17   correct?

18       A.    No.

19       Q.    What is your shield number?

20       A.    1021.

21            MR. LOVETT:  Let the record

22       reflect my client is wearing his

23       shield.  It does say 1021 on it.

24       Q.    Does this line (indicating),

25   does that appear to be your handwriting to

1                    KEVIN KEALY

2   you? On the top third of the document,

3   does that appear to be your print?

4        A.    What's the top third of the

5   document?

6        Q.    Okay, you see where it says

7   "verified by division commander"?

8        A.    Yes.

9             MR. LOVETT:  Where is that?  You

10       lost me.

11            MR. KEARON:  Right here

12       (indicating).

13       Q.    Please ignore my last direction

14   and focus your attention to where I'm

15   pointing on this document (indicating)

16   where it says officer's signature.  I'm

17   talking about every handwritten marking on

18   this document above that point.  I'm not

19   talking about anything below that point.

20   Do we understand each other?

21       A.    No, we don't.

22       Q.    I'm going to only be asking you

23   questions about handwritten markings made

24   on Charging Party 22 for identification

25   above the preprinted line that says

1                     KEVIN KEALY

2    officer's signature.  Do you understand

3    what I'm discussing?

4        A.    Yes.

5        Q.    You're familiar with your own

6    signature, correct?

7        A.    Yes.

8        Q.    Is that your signature or is

9    that not your signature?

10              MR. LOVETT:  Objection.  It is

11         not in evidence.

12              THE HEARING OFFICER:  Well, he

13         can ask him to identify something even

14         if it is not in evidence for the

15         purpose of admitting.

16              MR. LOVETT:  He has got to get

17         authentication of the document which

18         he doesn't have.  We can go all the

19         way around the mulberry bush to get

20         everything in, but he has circumvented

21         an elementary rule of evidence, it is

22         not in evidence.  You can't ask him

23         about something contained in it that

24         is merely for identification.

25              THE HEARING OFFICER:  Overruled.

```
1                    KEVIN KEALY

2        I will allow it.

3        Q.    Is this document, this

4  particular request for overtime, a

5  document that is used by the City of New

6  Rochelle Police Department in the regular

7  course of its business?

8            MR. LOVETT:  Objection.  Asked

9        and answered.

10           THE HEARING OFFICER:  I don't

11       believe he asked that question before.

12       Overruled.

13       A.    It looks like a copy of an

14  overtime slip.

15       Q.    My question is, whether this is

16  a copy or the original overtime slip, is

17  this form of overtime slip generally

18  speaking used by the City of New Rochelle

19  Police Department in connection with their

20  record keeping as it relates to overtime

21  requests on private-duty assignments?

22           MR. LOVETT:  Objection as to

23       form.  I don't know what that means.

24           THE HEARING OFFICER:  I think

25       the question is, is that a form used
```

1               KEVIN KEALY

2       for overtime in the New Rochelle

3       Police Department?

4               THE WITNESS:  It appears to be.

5               THE HEARING OFFICER:  You don't

6       know if it is an original or

7       authenticate?

8               THE WITNESS:  Exactly.

9               THE HEARING OFFICER:  But it

10      appears to be the format?

11              THE WITNESS:  It looks like it.

12      Q.    My question is whether it is a

13  copy or the original, that's either your

14  original signature or a copy of your

15  original signature?

16              MR. LOVETT:  Objection to form.

17      Which is it?  Conjunctive,

18      disjunctive?

19      A.    It looks like a copy of my

20  signature.

21      Q.    Do you see the name Joseph A.

22  Poggioli, Jr., written on here?

23      A.    Yes.

24      Q.    Does that appear to be your

25  handwriting in print, whether original or

1                    KEVIN KEALY

2    a copy?

3        A.    Yes.

4        Q.    Do you see where it says "third

5    tour," does that appear to be your print

6    handwriting there?

7        A.    Yes.

8        Q.    Do you see where it says Coligni

9    Avenue and Webster Avenue and below that

10   -- withdrawn.

11           Do you see where it says Coligni

12   Avenue and Webster Avenue.  Does that

13   appear to be your print, handwriting?

14       A.    Or a copy?

15       Q.    Yes, either an original or a

16   copy?

17       A.    You didn't say that.

18       Q.    Is yes the answer?

19       A.    Yes.

20           MR. KEARON:  I would offer

21       Charging Party 22 for identification

22       in evidence.  I contend it is an

23       original but there is some debate

24       about whether it is an original or

25       copy.  But not as an original, a true

KEVIN KEALY

copy of the overtime slip made by

Poggioli at this time.

MR. LOVETT:  No foundation.

THE HEARING OFFICER:  I'm not

going to allow it in at this time.  He

hasn't properly identified it.

MR. KEARON:  Then I would offer

it for a different purpose.  I would

offer it as a point of comparison

between a point of what is already in

evidence as Charged Party B in

evidence, for the purpose of

demonstrating that the signatures and

handwriting on this document have been

identified by this witness as

appearing to be his own.

MR. LOVETT:  Same objection.  It

is ridiculous.

THE HEARING OFFICER:  I'm not

going to allow it in.  If you have a

custodian of the records who wants to

let it in, then you do have the

testimony of him reasonably

identifying that it is a signature or

1              KEVIN KEALY

2      a copy of the signature that looks

3      like his, together with the other

4      questions that you asked.

5          MR. KEARON:  May I have a moment

6      to consult with my colleague?

7          THE HEARING OFFICER: Yes.

8          (Pause in the proceedings.)

9          MR. KEARON:  I have no more

10     questions for Officer Poggioli.

11         THE HEARING OFFICER:  Do you

12     have any cross-examination?

13         MR. LOVETT:  No.

14         MR. KEARON:  I'm prepared to

15     rest.  I want to call Captain Kealy

16     back to see if I can put this in.  If

17     there is no stipulation, I would like

18     to recall Captain Kealy to have him

19     identify this.

20         THE HEARING OFFICER:  You can

21     recall him.

22     KEVIN KEALY, recalled as a witness by

23     and on behalf of the Charging Party,

24     having been previously duly sworn by the

25     Hearing Officer, testified as follows:

1              KEVIN KEALY

2              THE HEARING OFFICER:  Captain

3      Kealy has been recalled by the

4      Charging Party, the City of New

5      Rochelle.

6              Captain Kealy, you're still

7      under oath.  Mr. Kearon has a few

8      questions for you.

9   CONTINUING REDIRECT EXAMINATION

10  BY MR. KEARON:

11         Q.    Captain, would you please take a

12  look at Charging Party 22 for

13  identification.  Take a moment to review

14  it and tell me if you recognize it?

15         A.    It is the overtime slip

16  submitted for the special-duty job by P.O.

17  Poggioli on the 20th.

18         Q.    Are there any markings on that

19  slip that to your knowledge were not there

20  at the time Officer Poggioli submitted

21  that slip?

22         A.    Not that that I could recall,

23  no.

24         Q.    How about specialty PDP 148.3,

25  what does that mean?

1

2                          CERTIFICATION

3

4        I, Irene Bindel, a Notary Public for

5   and within the State of New York, do

6   hereby certify:

7        That the witness whose testimony as

8   herein set forth, was duly sworn by me;

9   and that the within transcript is a true

10  record of the testimony given by said

11  witness.

12       I further certify that I am not

13  related to any of the parties to this

14  action by blood or marriage, and that I am

15  in no way interested in the outcome of

16  this matter.

17       IN WITNESS WHEREOF, I have hereunto

18  set my hand this 28th day of March, 2006.

19

20

            *Irene Bindel*

21              Irene Bindel, RPR, CSR

22

23              *        *        *

24

25