STATE OF NEW YORK
CITY OF NEW ROCHELLE
------------------------------------------------------------X

In the Matter of the Disciplinary Charges Preferred by

CAPTAIN KEVIN KEALY,                                           Penalty Recommendation

                              Charging Party,

                      -against-

POLICE OFFICER JOSEPH POGGIOLI,

                              Respondent.

------------------------------------------------------------X

To:  Patrick J. Carroll, Commissioner
      City of New Rochelle Police Department

As a result of disciplinary charges filed against Police Officer Joseph Poggioli ("Respondent") on or about May 19, 2005 by Captain Kevin Kealy of the New Rochelle Police Department, the undersigned, by letter dated July 18, 2005 and confirmed by letter dated September 9, 2005, was designated as Hearing Officer by Police Commissioner Patrick J. Carroll.

The Charges filed against the Respondent were as follows:

1. Conduct unbecoming a police officer in violation of Section 2.1 of the Rules and Regulations of the New Rochelle Police Department ("Rules and Regulations") (Charge 1);

2. Seeking compensation for time not worked in violation of Section 2.2 of the Rules and Regulations (Charge II);

3. Petit Larceny in violation of Section 2.3 of the Rules and Regulations (Charge III, Specification 1) and Falsification of Business Records in the Second Degree in violation of Section 2.3 of the Rules and Regulations (Charge III, Specification 2 & 3);

4. Failure to make an accurate entry on the Police Department's special duty sign out sheet in violation of Section 2.8 of the Rules and Regulations (Charge IV);

5. Failure to make an entry in the department issued memorandum book regarding special duty work in violation of Section 1.29 of the Rules and Regulations (Charge V) and;

06/27/2007 02:18    5167750237                VINCENT TOOMEY                    PAGE 17/22
                                 5167750237

6. Failure to cooperate in a truthful manner with a departmental investigation in violation of Section 2.23 of the Rules and Regulations (Charge VI).

On or about May 24, 2005, the Respondent filed an Answer denying all charges against him. The charges arose from the Respondent's submission of a request for overtime pay for working a special duty assignment at Coligni Avenue and Webster Avenue in the City of New Rochelle on April 20, 2005 and his subsequent conduct with respect to that special duty assignment.

Hearings were held before me on December 15, 2005, January 20, 2006, February 4, 2006, March 9, 2006, May 16, 2006, June 19, 2006 and July 7, 2006. All parties were represented by counsel and the Respondent also had the assistance of his union representative at all proceedings. Upon the request and consent of both parties, the hearing was bifurcated. Both parties were provided the opportunity to submit briefs at the end of the hearing with respect to the issues of guilt or innocence, and if the charges were sustained, to submit briefs with respect to the issue of penalty.

On April 24, 2007, I issued a Report and Recommendation, sustaining the allegations in each of the six disciplinary charges preferred against the Respondent. The City of New Rochelle has submitted a brief in support of their request for termination as a penalty. The Respondent, though provided the same opportunity, has submitted a letter electing not to submit a similar brief or memorandum.

The law is well settled that the test for review of a disciplinary penalty is "whether such punishment is "so disproportionate to the offense, in light of all of the circumstances, as to be shocking to one's sense of fairness." Pell v. Board of Education of Union Free School District No. 1 of the Towns of Scarsdale and Mamaroneck, 34 N.Y.2d 222, 233, 356 N.Y.S.2d. 833 (1974)(citations omitted)

> [A] result is shocking to one's sense of fairness if the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals. Additional factors would be the prospect of deterrence of the individual or of other individuals in like situations, and therefore a reasonable prospect of recurrence of derelictions by the individual

RECEIVED TIME    JUN. 27.    2:21PM

or persons employed. Id.

The underlying allegations which have been sustained, involve the following: falsely reporting hours worked, theft of time, making false and incomplete reports and dishonesty in a departmental investigation. Each of the allegations is of a serious nature, involving questions of moral turpitude and questions the Respondent's ability to effectively carry out his duties as a police officer. Furthermore, this type of conduct reflects adversely on his fellow members of the City of New Rochelle Police Department. The sustained allegations taken both separately and cumulatively can be considered as a grounds for termination:

Improperly submitted overtime request for time not worked on April 20, 2005. It is well established in the employment setting that falsification of one's time records is grounds for termination. Antignano v. Gunn, 134 AD2d 344 [2nd Dept 1987] (confirming the dismissal by the Transit Authority of an employee who had been found guilty of filing fraudulent claims for overtime and meal allowances.). See also, Hickman v. Poughkeepsie School District, 237 AD2nd 289 [2nd Dept 1997](termination is not an excessive penalty for an employee who falsified his time sheet). Additionally see, McClellan v. Alexander Central School Board of Ed, 207 AD2d 898 [4th Dept 1994]; Moran v. Triborough Bridge and Tunnel Authority, 188 AD2nd 898 [2d Dept. 1992]; Lorenzo v. Board of Ed. of Half Hollow Hills School Dist., 104 AD2nd 621 [2nd Dept 1984.

General dishonesty by Respondent submitting false overtime request and receiving pay for time not worked constituting larceny: There is substantial precedent that termination is an appropriate penalty for an employee who steals from his employer. Matter of Holmes v. Simpson, 64 NY2d 678 [1984]. Referring to Matter of Pell, supra, a transit authority employee was terminated based upon a finding of guilt for the misappropriation of property worth approximately $1.26. The New York Court of Appeals held that the penalty is not "shocking to one's sense of fairness" and affirmed the dismissal (Id. At 238-239). There are numerous other precedents where the termination of employment was predicated by a theft that was of apparently nominal value. See, e.g., Matter of Sanches v. Board of Education of the Yonkers City School District, 216 AD2d 30 [2nd Dept 1995] (confirming termination of school custodian

3

for theft of food items from a locked area of the school cafeteria); Matter of Sassone v. New York State Thruway Authority, 189 AD2nd 86, 89 [3rd Dept] (confirming termination of toll collector for tampering with records, seemingly for his own financial benefit). See, also, Matter of Coker v. New York City Transit Authority, 87 AD2nd 908 [2nd Dept 1979], aff'd, 49 NY2d 734 [1980]. Clearly, there is ample precedent that the value of the property misappropriated or stolen has no relevance to the determination of penalty.

Furthermore, in accordance with Pell, supra, a Hearing Officer need not consider extrinsic evidence, such as an employee's work history or other factors, in assessing a penalty, when the allegations involve employee theft. In Pell, 34 NY2d at 235 the court stated that "deliberate, planned, unmitigated larceny, or bribe taking, or demonstrated lack of qualification for the assigned job is not the kind of offense which warrants consideration of extrinsic factors." In the instant case, the Respondent submitted a request for overtime in a premeditated manner, fully aware that he had not worked the special detail noted in the request.

Police Officers are held to a higher standard of conduct. It has been repeatedly held by the Courts in the State of New York that police officers are held to a higher standard of conduct than non police employees "since the heightened standard bears a rational relation to maintaining the utmost integrity and respect for the law in those who are charged with its enforcement." Griffin v. Bratton, 248 AD2d 242, 242 [1st Dept 1998] (rev'd on other grounds 92 NY2d 781 [1991]). See also, Matter of Ladner, 254 AD2d 563, 564 [3rd Dept 1998] (stating that "[an] employee's willful disregard of standards of behavior that and employer has a right to expect in connection with the employment involved has been held to constitute misconduct.").) The charges of larceny have been sustained against the Respondent, and as a police officer, termination is an appropriate penalty. See, Matter of McMahon, 240 AD2d 806 [3rd Dept 1997]; Moore v. Constantine, 191 AD2d 769 [3rd Dept 1993]; Perez v. Ward, 157 AD2d 609 [1st Dept 1990]. In Alfieri v. Murphy 38 NY2d 976 [1976], the New York Court of Appeals affirmed the penalty of termination of a police officer for shoplifting $4.17 worth of merchandise while off duty. The Court stated that the "smallness of the value of the property stolen does not diminish the moral turpitude thus disclosed. Nor does it ameliorate the destructive impact such conduct

4

06/27/2007  02:18   5167750237                    VINCENT TOOMEY                           PAGE  20/22
                                          5167750237

tends to have on the confidence which is so important for the public to have in its police officers." (Id. at 977).

The conduct of the respondent is clearly one of moral turpitude, and his lack thereof will reflect unfavorably upon the New Rochelle Police Department.

<u>The Respondent lied to his superiors twice regarding the incident.</u> The respondent lied to his superiors twice regarding this incident, not only to cover up his acts of dishonesty, but to also collect for the overtime work he did not perform. Such conduct reflects unfavorably upon the Department and undermines his ability to perform his duties.

<u>The Respondent made as false entry in to the sign out/sign in log, failed to make an entry of the special duty detail in his log book and made false statements during a departmental investigation.</u> Police officers are expected to record their time accurately and honestly. In a special detail assignment the police officer works alone and the Department must be able to rely on their representations of hours worked. Also, the entries in an officer's memo book may serve to clarify any discrepancies about the duties performed. To keep the memo book accurate and up to date is a requirement of the job. Trust is an essential element of every police force. Without trust, it cannot operate effectively. That is why termination for dishonesty has been an appropriate penalty in past proceedings.

<u>The Respondent's prior disciplinary history.</u> Attached to the Petitioner's penalty memorandum was Appendix A with various documents from the Respondent's disciplinary file relating to incidents which resulted in the Respondent being disciplined. No documents were submitted by the Respondent in mitigation of this disciplinary records, and unchallenged, they must be considered as accurate. A review of those records reveals that the Respondent has been disciplined numerous times for conduct involving both acts of dishonesty and failure to perform his job effectively. On February 11, 1986 the Respondent accepted a command discipline involving the loss of one day's pay for taking departmental property, specifically six (6) fuses for his personal use. He thereafter pled guilty to charges dated January 5, 1988 alleging he entered a

5

local store and attempted to conceal and/or retain property, approximately six (6) Bic pens and accepted a five (5) day suspension without pay for that conduct. On October 26, 1986 the Respondent accepted a command discipline for sitting in his vehicle and not patrolling on foot when he was on off duty foot post, and on March 25, 1992, Poggioli pled guilty to leaving his post on an off duty detail and lost one leave day as a penalty. The record also reveals that the Respondent has, on numerous other occasions, been disciplined for failure to perform his duties. In July, 1988 charges were preferred against the Respondent for a number o incidents including a failure to remain alert, deserting his post, damaging a department vehicle and failure to dispatch. The Respondent agreed to a penalty of thirty (30) days' lost pay. Since the date of the charges the Respondent has twice violated the Department's rule prohibiting employees from working more than twenty (20) hours of special duty work in a single wee. For that he received a reprimand and one day loss of pay, respectively, for these offenses. In total, excluding the instant charges, the Respondent has been disciplined approximately fourteen (14) times during his tenure with the New Rochelle Police Department.

<u>Respondent alleges selective prosecution</u>. The Respondent alleged during the course of the hearing that he was singled out for disciplinary charges in a manner that was disproportionate to the discipline meted out to others in the Department. To support this contention he offered the adverse testimony of Detective D'Andrea and called as his witness Police Officer John Young. There was nothing in their respective testimony that warranted the dismissal of the charges nor is there anything in their testimony which is determinative of this penalty recommendation and therefore merits no further consideration. They represent two individuals in different circumstances who were administered by the Department in accordance with the facts of their respective cases. There is certainly no evidence in the record that they had been disciplined on fourteen (14) prior occasions.

Recommendation as to penalty:

At the outset, let me again state that I have read the brief submitted by the Petitioner and I am aware of the factors set forth in the seminal case, <u>Matter of Pell v. Board of Education</u>, 34 NY2d

6

222 (1974) and have taken note of those factors to the extent they were made available to me in this case. There are six (6) charges that have been sustained against the Petitioner who is a long term Police Officer of the City of New Rochelle. The charges as sustained reveal a Police Officer convicted of stealing from his own department, attempting to cover it up, and lying to his superiors during the course of the investigation. For this there can be no excuse, particularly for those employed in law enforcement. Additionally, the Respondent has a disciplinary history that stretches over his career resulting in approximately fourteen (14) separate disciplines. It would be a fair observation and comment to characterize the Respondent as a disciplinary recidivist. Respondent elected, through his attorney, to submit nothing in mitigation of the penalty that could be imposed as a result of this proceeding. Given the nature of the charges, the Respondent's significant disciplinary history and the total lack of mitigation, I recommend termination as the appropriate penalty.

With all the above factors in mind, and taking into account the demeanor and testimony of the witnesses during the course of the hearing, in my judgment this is a fair and just recommendation as to penalty under all of the circumstances herein.

June 25, 2007
White Plains, New York 10601

Respectfully submitted,

_Robert J. Ponzini-Hearing Officer_