UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JOSEPH A. POGGIOLI,

                              Plaintiff,                      **07 CV 6674 (CLB)**

       -against-

PATRICK J. CARROLL, individually, and
the CITY OF NEW ROCHELLE, New York,

                              Defendants.
------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION TO AMEND THE COMPLAINT**

 

LOVETT & GOULD, LLP
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, New York 10605
(914) 428-8401

**Table of Contents**

                                                                    **Page**

Preliminary Statement..............................................................................1

Statement of Facts................................................................................2

    Plaintiff's Protected Activity........................................................2

    Defendants' Retaliatory Actions........................................,......,...........4


POINT I
    PLAINTIFF HAS SET FORTH A VALID FIRST
    AMENDMENT CLAIM.....................................................................8

    A. Plaintiff Engaged in First Amendment
    Protected Activity........................................................................8

    B. There is a Causal Connection......................................................10


POINT II
    PLAINTIFF DEMONSTRATES A VIOLATION OF THE
    FOURTEENTH AMENDMENT.........................................................11

    A. Plaintiff was selectively treated in comparison to
    similarly situated employees............................................................12

    B. The selective treatment was prompted by bad faith, malice and/or
    an intent to retaliate against Plaintiff for having exercised his
    constitutional rights and there was no rational basis for
    Defendants' actions.....................................................................14


POINT III
    CARROLL IS NOT ENTITLED TO QUALIFIED IMMUNITY...................15

POINT IV
    THE EQUAL PROTECTION CLAIM IS PROPERLY
    BEFORE THIS COURT.................................................................16

POINT V
     PLAINTIFF SEEKS LEAVE TO SERVE A FIRST
     AMENDED COMPLAINT…………………………………………………...17

Conclusion……………………………………………………………………………19

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT AND
## CROSS-MOTION TO AMEND THE COMPLAINT

### PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of Plaintiff Joseph Poggioli in opposition to Defendants' motion for summary judgment and alternative motion that this Court abstain from consideration of Plaintiff's selective prosecution claim. Plaintiff opposes the motion in all respects.

Although the individual Defendant, Patrick J. Carroll properly moves for summary judgment on qualified immunity pursuant to this Court's Civil Case Discovery Plan and Scheduling Order, the Defendants also moved for summary judgment with respect to the City of New Rochelle in violation of this Court's directive.[1] Plaintiff's deposition has been conducted pursuant to this Court's rule requiring an early Rule 12 or Rule 56 motion where qualified immunity is asserted and permitting a deposition of Plaintiff, whose testimony must be deemed to be true.[2]

Plaintiff also seeks leave to amend his Complaint (Proposed First Amended Complaint, Nicaj Aff. Ex. 1) to add additional First Amendment activity as well as amplifying Plaintiff's Fourteenth Amendment claim in connection with Defendants'

---

[1] The Court's October 5, 2007 order provides that "[t]he motion shall, in the absence of agreement of counsel, be limited to the issue of qualified immunity."

[2] Simply stated, Defendants' motion on qualified immunity is premature. As this Court has noted, "[t]he difficulty with. . .[the] motion as presented is that the claim for the civil rights violation and the motion for summary judgment based on qualified immunity are essentially fact intensive and dependent on motive and intent." Herzog v. Will, 931 F.Supp. 276, 278 (S.D.N.Y. 1996)(Brieant, J). In that case this Court held that a decision on a motion for qualified immunity was impossible until the plaintiffs had an opportunity to have reasonable discovery. Id. at 276.

selective prosecution and termination of Plaintiff's employment as compared to other similarly situated members of the City of New Rochelle Police Department who engaged in misconduct and/or criminal activity of a more serious nature than for which Plaintiff was alleged to have committed.

## STATEMENT OF FACTS

*Plaintiff's Protected Activity*

*1.     1994 Lawsuit*[3]

In 1994, Plaintiff filed a civil rights action in this Court alleging *inter alia* a violation of his Fourth Amendment rights by Carroll, the City of New Rochelle, and other high ranking members of the City's Police Department. Poggioli v. Carroll, 94 Civ. 8313 (BDP)(hereinafter "Poggioli I")(Plaintiff's 56.1 Statement ¶39).

At trial in Poggioli I evidence adduced demonstrated that the Defendants in Poggioli I intentionally destroyed Plaintiff's personal property, broke into his departmental locker, and unlawfully reviewed/copied Plaintiff's privileged notes of a meeting he had with his then PBA attorney.  None of the Defendants in Poggioli I were arrested, prosecuted and/or subjected to disciplinary action for their unlawful conduct (Plaintiff's 56.1 Statement ¶40).

On November 26, 1996, a jury verdict was entered in Plaintiff's favor in the amount of $155,000 in compensatory and punitive damages as a result of which Carroll were infuriated and determined to retaliate against Plaintiff in the event an opportunity arose to do so (Plaintiff's 56.1 Statement ¶41).

---

[3]In Poggioli v. Murphy, 06 Civ. 12893 (CLB) (Def. Ex. G p. 5), although this Court found the 1994 lawsuit too remote in time to provide a causal connection between it and the preferral of charges, that action is referenced to provide background to the instant action.

2

The action was settled in September 1997 and the Court then discontinued the action (Plaintiff's 56.1 Statement ¶42).

Plaintiff was elected four times as President of the City of New Rochelle Police Benevolent Association ("PBA") during the period from 2001 and ending on December 31, 2003 (Plaintiff's 56.1 Statement ¶43).

During Poggioli's tenure as PBA President, he had clashes with the administration. In that connection, on numerous occasions as PBA President, Poggioli publicly criticized the Police Department and Commissioner Carroll in the various media outlets, including in newspapers, television and radio. He also addressed his concerns before the City Council (Plaintiff's 56.1 Statement ¶44).

Apart from appearing before the City Council with respect to contract negotiations, Poggioli appeared before the City Council to express his concern about the administration (Plaintiff's 56.1 Statement ¶45).

As alleged in Plaintiff's proposed First Amended Complaint,[4] as President Plaintiff also expressed his concern that antiquated police equipment posed a substantial risk to the safety of members of the Police Department and to the public and he did likewise with respect to expressing concern about the shortage of manpower in the Police Department (Proposed Amended Complaint ¶7, Nicaj Aff. Ex. 1). Plaintiff continued expressing his concern about antiquated equipment and the shortage of manpower even after his tenure as PBA President had ended which was known to Defendants until his termination (Proposed Amended Complaint ¶8, Nicaj Aff. Ex. 1).

---

[4] The same factual allegations are contained in Plaintiff's First Amended Complaint in Poggioli v. Murphy, et al., 06 Civ. 12893 (CLB) (First Amended Complaint, Nicaj Aff. Ex. 2)

*Defendants' Retaliatory Actions*

In April of 2005 for the first time an opportunity for retaliation against Plaintiff arose on the basis of a complaint regarding an incident where Poggioli was accused of having submitted an overtime slip for an off-duty police assignment for approximately one hour of time that he claimed to have worked but Carroll, among others agreed to accuse him of not working (Plaintiff's 56.1 Statement ¶47).

In that connection the amount of money in controversy was approximately $67, a portion of which Defendants knowingly retained (despite their allegation that the private sector contractor [Persico Construction] who paid for the services Poggioli claimed to have worked should not have paid that money to the City at all) for expenses incurred in the Police Department. The balance of that sum was paid by Defendants to Plaintiff - - notwithstanding their allegation that he was not entitled to be paid (Plaintiff's 56.1 Statement ¶48).

On May 19, 2005, disciplinary charges were preferred against Plaintiff accusing him of having submitted the referenced overtime request for time that he allegedly did not perform services. Carroll discussed the charges against Poggioli before they were filed (Plaintiff's 56.1 Statement ¶49).

In that connection, Defendants agreed to retain the services of a "hearing officer" well known in the legal community to not only always rule in favor of the municipal corporation paying his fees but to actually fabricate evidence to bolster his findings of "fact" (Plaintiff's 56.1 Statement ¶50).

During the disciplinary proceeding, the hearing officer refused to admit the City PBA President's testimony (Plaintiff's 56.1 Statement ¶80).

4

In particular, the PBA President would have testified that during the course of that prosecution Captain Kealy was overheard by him (President) discussing in a hallway a self-evident dilemma they faced - - how to explain prosecuting Plaintiff for requesting overtime money for time allegedly not worked when numerous Police Officers routinely engaged in the same conduct with respect to which Plaintiff stands accused (Plaintiff's 56.1 Statement ¶52).

Over a period of months Defendants then prosecuted, at a cost of substantially in excess of $50,000, the retaliatory disciplinary proceeding having pre-determined that Plaintiff will be found guilty and terminated from the City's employ (Def. Ex. D ¶16).

On or about April 24, 2007, in connection with the rigged disciplinary proceeding referenced in the 2006 (Def. Ex. D), Hearing Officer Robert J. Ponzini generated a substantially falsified and/or materially inaccurate report and recommendation finding Plaintiff guilty of disciplinary charges. Ponzini did so in accordance with his well established and publicly known reputation for always and/or virtually always finding governmental employees guilty of whatever disciplinary charges have been leveled against them by, *inter alia*, the City of White Plains, the County of Westchester, and the City of New Rochelle. In fact by reason of his established record of convicting such employees, he was appointed to preside over the Poggioli disciplinary since the appointing authority knew that in exchange for pecuniary gain Ponzini would convict Plaintiff regardless of the evidence (Def. Ex. A ¶7).

On or about June 25, 2007, the Hearing Officer earned the balance of his fees from the City of New Rochelle by recommending that Plaintiff be terminated (Def. Ex. A ¶8).

On July 20, 2007, Defendants in writing terminated Plaintiff's employment, a termination that was motivated in whole and/or substantial respect by Plaintiff's protected activities (Def. Ex. A ¶9).

Indeed, members of the Police Department who have engaged in criminal wrong doing on the job (as known by Defendants and identified during Plaintiff's disciplinary hearing) as well as other members of the Department who wholesale violated and continue to violate the federal civil rights of the only Police Officer of Middle Eastern descent employed by the City have neither been subjected to formal disciplinary charges nor terminated from the City's employ. Instead that criminal misconduct and those civil rights violations have been encouraged, condoned and ratified by Defendants while subjecting Plaintiff's to disciplinary action, including termination without having a rational basis for doing so (Def. Ex. A ¶10). [5]

In that connection, Police Officers Colotti, Pitzeo and Vasquez were paid for off-duty work which they had not performed and they were not disciplined. Plaintiff

---

[5]While this Court found in Poggioli v. Murphy, et al., 06 Civ. 12893 (CLB), examples of employees' misconduct in other City Department was not sufficiently similar in Plaintiff's Fourteenth Amendment Equal Protection claim, treatment of those employees is certainly relevant to highlight Plaintiff's treatment as compared to not only similarly situated members of the Departments but numerous other City employees. In that connection, the City Marshall, an attorney, openly operates a private law practice out of the Courthouse using, at taxpayers' expense, on-duty City and State employees' services to draft his private clients' wills and contracts for the sale of real property - - stealing in that process government-owned paper, copiers, computer equipment, and other office supplies (Def. Ex. C ¶86). One female employed in the Court Clerk's Office openly and admittedly has repeated engaged with impunity in the felonious sale of controlled substances (Vicodin and Valium) in that Office to other employees (Def. Ex. C ¶87). That same female while working in the Clerk's Office has also openly and admittedly engaged with impunity in felony possession of controlled substances (Vicodin and Valium) that had been feloniously sold to her by certain of her co-workers (Def. Ex. C ¶88). That female employee's multiple co-workers, who have under oath been identified by name as having engaged in the felony sale of controlled substances to that female, have neither been arrested, prosecuted nor subjected to disciplinary charges with a view towards termination (Def. Ex. C ¶89). Another female employee working in the City Court Clerk's Office has openly and admittedly engaged in grand larceny, stealing in excess of $3,000 from funds received by and belonging to the Court - - later bragging in testimony that she was "never charged" with that theft (Def. Ex. C ¶90).

reported Colotti and Vasquez to Captain Gozzola. No disciplinary action was taken against them (Plaintiff's 56.1 Stmt ¶55)

On one occasion Officer Young submitted overtime sheets indicating that he worked from 9:00 a.m. to 6:00 p.m. when he in fact arrived between 9:10 and 9:15 a.m. and worked until 5:45 p.m. In that instance, Captain Gozzola simply had Young "redo [their] overtime hours" and no disciplinary charges were preferred (Plaintiff's 56.1 Stmt ¶56).

Police Detective Robert D'Andrea was not arrested, criminally prosecuted, and/or disciplined for stealing evidence (a computer) from the Department's Property Clerk's Office and when caught discarding the evidence in the garbage. Subsequently D'Andrea, who was recruited by Defendants to testify against Plaintiff in the disciplinary proceeding, was reassigned as the Department's Communications Supervisor in charge of intra-departmental security systems (Plaintiff's 56.1 Stmt ¶57).

Detective Landau falsified a police report in connection with a drug arrest and may have been suspended for a brief time. Landau also tampered with Plaintiff's access card on multiple occasions. Poggioli notified Captain Kealy but nothing happened (Plaintiff's 56.1 Stmt ¶58).

Detective Grosso committed larceny. While his unit raiding a unit, he stole a cable box. Grosso was then reassigned (Plaintiff's 56.1 Stmt ¶59).

Detective Torres, while driving intoxicated in White Plains, was involved in a hit and run accident which resulted in injury to another person. Torres was suspended briefly (Plaintiff's 56.1 Stmt ¶ 60).

Officer Finney was caught soliciting a prostitute during a sting operation in New York City (Plaintiff's 56.1 Stmt ¶61). Finney was suspended for 30 days (Id.).


# POINT I

## PLAINTIFF HAS SET FORTH A VALID
## FIRST AMENDMENT CLAIM

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged First Amendment protected activity; (2) he suffered adverse employment action; and (3) the protected activity was "a substantial or motivating factor" in the adverse employment action. Hale v. Mann, 219 F.2d 61 (2nd Cir. 2000); Morris v. Lindau, 196 F.3d 102, 110 (2nd Cir. 1999).

Plaintiff was terminated so there is no issue as to whether Plaintiff suffered adverse action.

## A.  Plaintiff Engaged In First Amendment Protected Activity

### 1. 2006 Lawsuit

It is an elementary principle of law that "[t]he right to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment." Dougherty v. Town of North Hempstead Board of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002).  Furthermore, "[t]he paramount importance of judicial truth-seeking means that truthful testimony is almost always a public concern." Catletti v.

Rampe, 334 F.3d 225 (2d Cir. 2003)(affirming this Court's denial of summary judgment on qualified immunity).

Contrary to Defendants' assertion, Plaintiff's 2006 action is a matter of public concern for he alleged in that action that the City failed to take law enforcement action with respect to on-going criminal wrongdoing permeating both the Police Department and the City of New Rochelle. Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist., 411 F.3d 306, 313 (2d Cir.2005) ("Public accusations of improper governmental actions are clearly matters of public, regardless of whether the accuser is motivated by personal reasons.").

### 2. Plaintiff's PBA activities

The Second Circuit has held "the First Amendment's protection of the right of association extends to labor union activities." International Longshoreman's Association, AFL-CIO et al. v. The Waterfront Commission of the City of New York, 642 F.2d 666 (2d Cir.1984). Moreover, statements made to the media are protected when they raise matters of public concern. See Reuland v. Hynes, 460 F.3d 409, 418 (2d Cir. 2006).

While PBA president from 2001 through December 31, 2003, Plaintiff engaged in protected conduct, which included publicly criticizing the Police Department and Commissioner Carroll in the various media outlets, including in the newspapers, television and radio. He also addressed his concerns about the administration before the City Council. As PBA President, Poggioli clashed with the administration on a number of occasions. Plaintiff's repeated expressions of concern while he was PBA President clearly amounts to First Amendment protected conduct.

3. Additional Protected Activity

As alleged in Plaintiff's proposed First Amended Complaint, Plaintiff first expressed his concern about the antiquated police equipment posing a substantial risk to the safety of members of the Police Department and to the public as he similarly did with respect to expressing concern about the shortage of manpower at the Police Department posing a danger while he was PBA president (Proposed Amended Complaint ¶7, Nicaj Aff. Ex. 1). Indeed, Plaintiff continued to express that concern after his tenure as PBA President had ended right up until his termination (Proposed Amended Complaint ¶8, Nicaj Aff. Ex. 1).

**B. There is a Causal Connection**

Based on the evidence, a jury could reasonably conclude that the Defendants terminated his employment as a result of his protected conduct which occurred shortly before his termination. In particular, while he filed the lawsuit in November 2006, that case was in the middle of litigation when he was terminated from his employment in July 2007. Moreover, Plaintiff's proposed complaint and First Amended Complaint in the earlier action  (Nicaj Aff. Ex. 1 and 2) sufficiently states that Poggioli engaged in protected speech until his termination.

Causation may be established three different ways: 1) by showing that the protected activity was followed closely by discriminatory treatment; 2) disparate treatment of fellow employees; or 3) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.  Gordon v. New York City Board of

Education, 232 F.3d 111, 117 (2d Cir. 2000); *see also* Morris, 196 F.3d at 110; Sumner v. United States Postal Service, 899 F.2d 203, 209 (2nd Cir. 1990).

## POINT II

### PLAINTIFF DEMONSTRATES A VIOLATION
### OF THE FOURTEENTH AMENDMENT

Defendants next assert that since Plaintiff has not established a First Amendment claim, his Fourteenth Amendment claim must be dismissed. Defendants fail to recognize that Plaintiff's Fourteenth Amendment claim is not dependent on Plaintiff's First Amendment claim. Plaintiff is required to establish one of several factors to make a Fourteenth Amendment claim of selective protection.[6]

In that connection, to prove his selective prosecution claim, Plaintiff is required to show that: (1) he was selectively treated in comparison with someone who was similarly situated; and (2) the selective treatment was prompted by impermissible considerations such as: i) race, ii) religion, iii) intent to inhibit or punish the exercise of constitutional rights, iv) malicious or bad faith intent to injure a person, or v) that the Defendants do not have a rational basis for the difference in treatment. Skehan v. Village of Mamaroneck, 465 F.3d 96, 110 (2d Cir. 2006); Harlen Associates v. Incorporated Village of Mineola, 273 F.3d at 499-500 (2nd Cir. 2001) (conduct is irrational where no legitimate reason exists for government's actions); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000);

---

[6] Assuming *arguendo* Defendants' contentions concerning Plaintiff Equal Protection claim are plausible, Plaintiff's proposed First Amended Complaint, which seeks to add additional First Amendment protected activity and amplify his Fourteenth Amendment claim, renders them moot.

<u>Diesel v. Town of Lewisboro</u>, 232 F.3d 92, 103 (2nd Cir. 2000); <u>Lisa's Party City, Inc., v.</u>
<u>Town of Henrietta</u>, 185 F.3d 12 (2d Cir. 1999).

## A. Plaintiff was selectively treated in comparison to similarly situated employees

"In order for employees to be 'similarly situated' for purposes of establishing a

plaintiff's prima facie case, they 'must have been subject to the same standards governing

discipline and must have engaged in conduct similar to the plaintiff's". <u>Norville v. Staten</u>

<u>Island University Hospital</u>, 196 F.3d 89, 96 (2d Cir. 1999); <u>Graham v. Long Island Rail</u>

<u>Road</u>, 230 F.3d 34, 40 (2d Cir. 2000) (". . .the standard we used in <u>Shumway</u> [v. United

<u>Parcel Serv., Inc.</u>, 118 F.3d 60, 64 (2d Cir. 1997)] requires plaintiff to show that similarly

situated employees who went undisciplined engaged in comparable conduct. . . That an

employee's conduct need not be identical to that of another for the two to be similarly

situated is also reflected in the language of <u>McDonnell Douglas</u> where the Supreme Court

used the phrase 'comparable seriousness' to identify conduct that might be held to support

an inference of discrimination").

In order for two or more individuals to be similarly situated the precise, identical

circumstances are not required. Rather, "the test is whether a prudent person would think

them **roughly equivalent**." <u>Depace v. Flaherty</u>, 183 F.Supp.2d 633, 640 (S.D.N.Y. 2002)

(emphasis added), *citing* <u>Penlyn Dev. Corp. v. Village of Lloyd Harbor</u>, 51 F.Supp.2d

255, 264 (E.D.N.Y. 1999).

The record thus far, albeit incomplete, clearly evidences that other individuals

similarly situated to Plaintiff were not disciplined for the same or more serious misconduct

he was alleged to have committed. On one occasion Officer Young submitted overtime

sheets indicating that he worked from 9:00 a.m. to 6:00 p.m. when he in fact arrived between 9:10 and 9:15 a.m. and worked until 5:45 p.m.. In that instance, Captain Gazzola simply had Young his overtime hours and no disciplinary charges were preferred (7/9/06 Poggioli Disc. Tr. p. Tr. 600, Nicaj Aff. Ex. 9).

Moreover, three other police officers, Colotti, Pitsel and Vasquez, were paid for off-duty work which they did not perform and they were not disciplined (Poggioli Dep. p. 33-34). Plaintiff reported Colotti and Vasquez to Captain Gazzola (Poggioli Dep. p. 39-40). Colotti put in for time he did not in fact work (Poggioli Dep. p. 34-36). As for Pitsel and Vasquez, they went to a off-duty job and no one else was present, no work was performed but they put in for the hours of work (Poggioli Dep. p. 36-37).

There are other examples where members of the Police Department were treated in a more lenient fashion than Plaintiff, including Sergeant D'Andrea who stole a computer which was evidence from the Department's Property Clerk's office (2/4/06 Tr. p. 5-7, 10-11). D'Andrea was not terminated or demoted (2/4/06 Tr. 13-14). Carroll never bothered speaking to D'Andrea about the matter (2/4/06 Tr. 14). Instead D'Andrea, who was a thief, was rewarded and put in charge of security. Moreover, Detective Landau who falsified a police report in connection with a drug arrest and may (or may not) have been suspended for a brief time. Landau also tampered with Plaintiff's access card on at least three occasions with no punishment.

Detective Grosso committed larceny by stealing a cable box while raiding a unit but he was merely reassigned (Plaintiff's 56.1 Stmt ¶59). Detective Torres caused an accident and injured someone because he was driving while intoxicated in White Plains and was merely suspended briefly (Plaintiff's 56.1 Stmt ¶59).

**B. The selective treatment was prompted by bad faith, malice and/or an intent to retaliate against Plaintiff for having exercised his constitutional rights and there was no rational basis for Defendants' actions**

At a minimum, Defendants' decision terminate Plaintiff's employment for a time slip issue under the circumstances, was irrational.

Indeed, Plaintiff's termination leaves little doubt that Defendants treated Plaintiff differently than other members of the Police Department and at a minimum Defendants had no rational reason for doing so. In that connection, while Defendants claim that Plaintiff put in for an hour of work that he did not perform, they nevertheless made a claim for that hour to the contractor. The Defendants not only paid Plaintiff, the City retained a portion of the $67. Given these circumstances and the fact that the City spent well over $50,000 to prosecute the disciplinary hearing against Plaintiff with respect to one hour – which totaled the grand sum of $67, Defendants' actions were clearly not rational. On one hand, they terminated Plaintiff for that one hour but on the other hand, they admittedly stole from the contractor by failing to return the $67 and keeping a portion of that sum.

Plaintiff additionally seeks leave to amend to add other allegations in connection with his Fourteenth Amendment selective prosecution claim. In Plaintiff's proposed First Amended Complaint, in addition to alleging that Defendants took action against him because as a result of his First Amendment activity, Plaintiff also alleges that Carroll harbored malice and bad faith towards him as a result of Plaintiff successfully suing him 1994. Plaintiff also alleges that there was no rational basis for the difference in the way he was treated as compared to others similarly situated.

14

As set forth in his proposed Amended Complaint, Plaintiff has set forth that the selective treatment of him was also based on the malicious or bad faith intent to injure him, especially when the evidence in this incomplete record alone, shows that other members of the Police Department regularly engaged in the same conduct for which Plaintiff was subjected to disciplinary action.

Finally, as set forth in the proposed Amended Complaint, Defendants did not have a rational basis for subjecting Plaintiff to termination with especially in view of the fact that other members of the department regularly put in for time that they did not in fact work but were not terminated – much less disciplined. Indeed the PBA President overheard Kealy voicing concern along similar lines. Clearly, Defendants knew their actions under the circumstances were not rational but they proceeded nonetheless.

Consequently, even if Plaintiff did not sufficiently establish a First Amendment violation, summary judgment on his Fourteenth Amendment claim cannot possibly granted in view of the selective treatment of him relative to other similarly situated members of the Police Department without any rational basis.


### POINT III

### CARROLL IS NOT ENTITLED
### TO QUALIFIED IMMUNITY


In view of the clearly established law and Carroll's unreasonable actions, he is not entitled to qualified immunity and for the reasons previously set forth, defendants' motion for qualified immunity should be denied. *See* Points I and II, *supra*.

Under these circumstances, where the rights in question were clearly established at the time the adverse actions were taken and Plaintiff has demonstrated the existence of constitutional violations, Carroll cannot possibly have immunity since he could not have possessed an "objectively reasonable belief" that his actions were lawful. Put differently, no reasonable official in Carroll's shoes would have believed it was permissible to: (1) take adverse employment action against Plaintiff in retaliation for his First Amendment protected activities; and (2) selectively terminate his employment without a rational basis, in bad faith, with malice and/or prosecute him in retaliation for exercising of his constitutional rights.

Since no reasonable official would believe it lawful to take the adverse actions complained of herein if they were motivated, at least in part, by Plaintiff's protected activities, his motion on qualified immunity grounds must be denied. As the Second Circuit has held: "it can never be objectively reasonable for a governmental official to act with the intent that is prohibited by law." Locurto v. Safir, 264 F.3d 154, 169 (2nd Cir. 2001).

## POINT IV

### THE EQUAL PROTECTION CLAIM
### IS PROPERLY BEFORE THIS COURT

Contrary to Defendants' claim, this Court should not abstain from considering Plaintiff's Equal Protection claim. They falsely contend that Plaintiff has raised his Fourteenth Amendment equal protection claim in his state-court Article 78 proceeding (Defendants' Memorandum p. 13). Indeed, Plaintiff has not done so.

16

Among the eight claims that Plaintiff asserts in the Article 78 proceeding, he asserts **state** – not federal -- causes of action on the basis that the disciplinary charges was selective.   In any event, the Court has previously ruled on Plaintiff's Equal Protection claim in the earlier action, <u>Poggioli v. Murphy, et al.</u>, 06 Civ. 12893 (CLB).

While Defendants cite an unpublished District Court case, <u>Bonato v. Infinito Art & Culture Foundation</u>, 2007 WL 1052449 (S.D.N.Y.) in support of their application, that case emphasizes that deferring to a state action is not favored for the federal courts have the "'virtually unflagging obligation . . .to exercise the jurisdiction given them.'" <u>Id.</u> at *4, *quoting* <u>Colorado River Water Conservation Dist. V. U.S.</u>, 424 U.S. 800, 817 (1976).

Furthermore, the Court should not abstain from considering the Equal Protection claim insofar as punitive damages are not available in his Article 78 proceeding.  <u>Dorsett-Felicelli, Inc. v. County of Clinton</u>, 371 F.Supp.2d 183, 190 (N.D.N.Y. 2005).


## POINT V

### PLAINTIFF SEEKS LEAVE TO SERVE A FIRST AMENDED COMPLAINT

Plaintiff seeks leave pursuant to Rule 15 of the Federal Rules of Civil Procedure to file and serve a First Amended Complaint to include Plaintiff's First Amendment protected speech while he was PBA president which he continued to express until his termination on July 2007 relating to antiquated police equipment and the shortage of manpower which endangered members of the Department as well as the public.  He also seeks leave to amplify his Fourteenth Amendment selective prosecution claim to add that Defendants retaliated against Plaintiff because he exercised his constitutional rights, that Defendants were motivated to do so because of malice and/or bad faith towards Plaintiff

and they had no rational basis for the difference in treatment of Plaintiff as compared to others similarly situated (Plaintiff's Proposed First Amended Complaint, Nicaj Aff. Ex. I).

In connection with a Rule 15(a) application, leave to serve an amended complaint should be "freely granted" [Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)("In exercising its discretion the district court is required to heed the command of Rule 15(a) to grant leave to amend 'freely...when justice so requires.'"); Oliver Schools Inc., v. Foley, 930 F.2d 248, 252 (2d Cir. 1991); Goss v. Revlon, 548 F.2d 405, 407 (2d Cir. 1976)] absent a compelling reason such as "undue delay, bad faith or dilatory motive on the part of the movant" [Stats Trading Corp. of India v. Assuranceforenginger Skuld, 921 F.2d 409, 417 (2d Cir. 1990); Acito v. Imcera Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995)] or "undu[e] prejudice [to] the opposing party". S.S. Silberblatt, Inc., v. East Harlem Pilot, 608 F.2d 28, 42 (2d Cir. 1979). Indeed, leave to amend a complaint under Rule 15(a) "should normally be granted". Nerney v. Valente, 66 F.3d 25, 28 (2d Cir. 1995).

Against these well-settled principles, no extended argument is required in support of the conclusion that leave should be granted in this case. Indeed prejudice is not a realistic concern in this instance. The proposed addition of facts will simply serve to amplify those contained in the first complaint and Plaintiff's deposition and substantive discovery has yet to begin apart from Plaintiff's Deposition.

Defendants here are clearly not prejudiced for Plaintiff's deposition provided them notice concerning his PBA activities. Indeed, Defendants' 56.1 Statement, Memorandum and even Allen's Affidavit to address his PBA activities.

It is settled law that regardless of what is contained within the four corners of the original complaint, pursuant to FRCP 15(b) a motion to amend the complaint to conform to the proof may be made at any time - even during trial.

> If evidence is objected to at trial on the ground that it is not
>
> within the issues made by the pleadings, the court may allow
>
> the pleading to be amended and shall do so freely when the
>
> presentation of the merits of the action will be subserved
>
> thereby and the objecting party fails to satisfy the court that the
>
> admission of such evidence would prejudice him in
>
> maintaining his action or defense upon the merits.

Hillbarn v. Maher, 795 F.2d 252, 264 (2d Cir. 1986); Fisher v. Vassar College, 70 F.3d 1420, 1449 (2d Cir. 1995).

Against this background, it is readily apparent that permission to file and serve the Proposed First Amended Complaint should be granted.

## CONCLUSION

Defendants' motion should be denied in all respects and Plaintiff's motion to file a First Amended Complaint should be granted.

Dated: White Plains, New York
       January 2, 2008

                        LOVETT & GOULD, LLP

                        By:                   
                              Drita Nicaj (DN 0966)
                              Attorneys for Plaintiff
                              222 Bloomingdale Road
                              White Plains, NY 10605
                              (914) 428-8401

20