UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JOSEPH A. POGGIOLI,

                              Plaintiff,                          07 Civ. 6674 (CLB)

                                                                  **PLAINTIFF'S**
            -against-                                             **COUNTERSTATEMENT**
PATRICK J. CARROLL, individually, and                             **PURSUANT TO RULE 56.1**
the CITY OF NEW ROCHELLE, New York,

                              Defendants.

------------------------------------------------------------x

        Plaintiff JOSEPH A. POGGIOLI by his attorneys, Lovett & Gould, LLP states the

following in response to Defendants' Statement Pursuant to Rule 56.1 of the Local Rules of this

Court.[1]  In addition, as set forth below, Plaintiff contends that there are material facts which are

not disputed and genuinely disputed issues of material fact that preclude the granting of

summary judgment.

        This motion is brought pursuant to the procedures set forth in paragraph 3(d) of the

Civil Case Discovery Plan and Scheduling Order, entered on October 5, 2007.


                                        **The Parties**

1.      Plaintiff Joseph A. Poggioli ("Poggioli") is a former member of the New

Rochelle Police Department ("NR-PD"). *See* Complaint, at ¶3. A copy of the complaint

---

[1] Defendants have brought this motion pursuant to this Court's individual rules relating to qualified immunity.  It is
respectfully submitted that the motion is premature and a decision be stayed pending the conclusion of discovery in
this case. Defendants' depositions have not taken place.

in the instant action is annexed hereto as Exhibit A.

        **Response:**    **Admits.**

      2.     Defendant Patrick J. Carroll currently serves, and at all relevant times has served,

as the Commissioner of Police of the NRPD. Complaint (Ex. A), at ¶4.

        **Response:**    **Admits.**

      3.     Defendant City of New Rochelle is a municipal corporation created by and duly

existing under the laws of the state of New York. Complaint (Ex. A), at ¶5.

        **Response:**    **Admits.**

### Pertinent Facts and Procedural History

<u>The 1994 Litigation</u>

      4.     On or about November 16, 1994, Poggioli initiated a federal lawsuit in this

Court entitled: *Joseph A. Poggioli, Jr. v. Patrick J. Carroll, individually and as Police*

*Commissioner of the City of New Rochelle, Dominic Capio, individually and as a Lieutenant*

*in the Police Department of the City of New Rochelle, Anthony Murphy, individually and*

*as a Captain in the Police Department of the City of New Rochelle, Joseph F. Schaller,*

*individually and in his capacity as a Captain in the Police Department of the City of New*

*Rochelle, Police Officer John Doe and/or Mary Roe individually, the City of New Rochelle,*

*New York and Joseph Mattone, individually,* 94

CIV 8313 (BDP)(MDF) (the "1994 Action"). A copy of the complaint in the 1994

Action is annexed as Exhibit B.

        **Response:**    **Admits.**

5.    Poggioli was first employed as a police officer with the NRPD in or about 1980. Ex. B, at ¶3.

**Response:    Admits.**

6.    In the 1994 Action, Poggioli alleged that his Fourth Amendment rights were violated when a person or persons broke into his departmental locker. Ex. B, at ¶8.

**Response:    Admits.**

7.    On or about November 16, 1996, a jury returned a verdict in Poggioli's favor, awarding compensatory and punitive damages. *See* Poggioli's Counterstatement Pursuant to Rule 56.1, dated April 2, 2007 ("Poggioli's Rule 56.1 Counterstatement"), at ¶10. A copy of Poggioli's Rule 56.1 Counterstatement is annexed as Exhibit C.

**Response:    Admits.**

8.    On May 20, 1997, the district court (Parker, J. ) found the punitive damages award to be excessive and ruled that the Poggioli could either accept a reduced award or elect to have a new trial. Poggioli's Rule 56.1 Counterstatement (Ex. C), at ¶11.

**Response:    Admits.**

9.    The 1994 Action was thereafter settled. Poggioli's Rule 56.1 Counterstatement (Ex. C), at ¶12.

**Response:    Admits.**


The 2006 Litigation,

10.    On November 3, 2006, Poggioli commenced an action in this Court entitled *Joseph A. Poggioli v. Anthony Murphy, Individually, Kevin Kealy, individually, Patrick J Carroll, individually, Myron Joseph, individually, and the City of New*

*Rochelle,* 06 Civ. 12893 (CLB) (the "2006 Action"). A copy of the complaint in the 2006 Action

is annexed hereto as Exhibit D. A copy of the complaint in the 2006 Action was also referenced in

and physically attached to the complaint in the 2007 Action. *See* Ex. A.

**Response:    Admits.**

11.    The 2006 Action pertains to disciplinary charges preferred in connection with a

special-duty detail on April 20, 2005, in which Poggioli was assigned to direct traffic for

Persico Construction Corporation around a construction project located at the

corner of Webster Avenue and Coligini Avenue in New Rochelle (the "Persico

Assignment"). *See* Ex. D.

**Response:    Admits.**

12.    Poggioli submitted a request for 3.5 hours of overtime compensation in

connection with his work on the Persico Assignment, contending that he should be

credited for working between 12:00 noon and 3:30 p.m. Poggioli's Rule 56.1

Counterstatement (Ex. C), at ¶¶31-32.

**Response:    Admits.**

13.    Based on an investigation into the facts and circumstances surrounding

Poggioli's request for compensation on the Persico Assignment, the NRPD preferred

disciplinary charges against Poggioli (the "Disciplinary Charges"). A copy of the

Disciplinary Charges is annexed as Exhibit E.

**Response:    Denies. Citation does not support the foregoing paragraph.**

14.    The Disciplinary Charges alleged generally that Poggioli's application for

compensation for the Persico Assignment was false and inaccurate. In particular, the charges

alleged that Poggioli claimed to have started the assignment at 12:00 noon when, in fact, he was

4

still at Police Headquarters a little after 1:00 p.m. on the day in question. *See* Ex. *E; see also* Poggioli's Rule 56.1 Counterstatement (Ex. C), at ¶61.

**Response:    Denies.  In particular the charges do not allege that he was still at Police Headquarters a little after 1:00 p.m. ( Id.).**

15. Poggioli claimed in the 2006 Action that the Disciplinary Charges violated his First Amendment rights because they were preferred against him in retaliation for his bringing the 1994 Action. Ex. D, at ¶~9-14.

**Response:     Admits and further adds that Plaintiff Amended that Complaint on August 24, 2007 to add additional First Amendment activity as set forth *in* ¶ 68 *infra.***

16.    Poggioli also claimed in the 2006 Action that the Disciplinary Charges and the ensuing disciplinary proceedings constituted a selective prosecution in violation of his Fourteenth Amendment rights. Ex. D, at ¶17.

**Response:    Admits.**

17.    On March 2, 2007, the defendants in the 2006 Action - Commissioner Patrick J. Carroll, Deputy Commissioner Anthony Murphy, Captain Kevin Kealy, Sergeant Myron Joseph, and the City -- filed a motion for summary judgment on grounds of qualified and absolute immunity, and other grounds. *See* 2006 Action Docket, at docket entries 11-15. A copy of the Docket from the 2006 Action is annexed as Exhibit F.

**Response:    Admits.**

18.    The summary judgment motion in the 2006 Action was fully submitted on April 13, 2007. Exhibit F, at docket entries 16-22.

**Response:    Admits.**

19.    On July 26, 2007, this Court (Brieant, J.) issued a Memorandum and Order granting

summary judgment to Sergeant Joseph on grounds of qualified immunity, but otherwise denying the motion. A copy of the Memorandum and Order is annexed as Exhibit G.

**Response:      Admits.**

20.      In ruling on the summary judgment motion, this Court stated: "the evidence is overwhelming that [Poggioli] was in Police Headquarters until just after 1:00 PM [on April 20, 2005], and therefore could not have been on [the Persico Construction] site at 12:00 as he claimed." Ex. G, at p.3.

**Response:      Admits.**

21. This Court further held that "[a]s for First Amendment retaliation, [Poggioli's] 1994 action in federal court is too remote in time to provide a causal connection between it and the preferring of disciplinary charges in 2005." Ex. G, at p.5.

**Response:      Admits.**

22. Regarding the Fourteenth Amendment claim in the 2006 Action, this Court held that employees of the City Court, and the City Marshall, are not similarly situated with Poggioli. Ex. G, at p.6.

**Response:      Denies materiality.**

23. On August 16, 2007, the remaining defendants in the 2006 Action filed a notice of appeal from the Court's July 26, 2007 Memorandum and Order. *See Ex.* F, at docket entry No. 25.

**Response:      Denies materiality.**

24.      The appeal from the July 26, 2007 Memorandum and Order is currently pending before the United States Circuit Court of Appeals for the Second Circuit.

**Response:      Admits.**

<u>The 2007 Litigation</u>

25.    The Disciplinary Charges were signed by Captain Kevin Kealy on May 19, 2005. Ex. E.

**Response:    Admits.**

26. Prior to the preferment of the Disciplinary Charges, Poggioli was offered command discipline consisting of a 30-day suspension and 6-months prohibition from taking on special duty work. *See* Deposition of Joseph A. Poggioli, taken October 30, 2007 ("Poggioli Dep"), at 35:23-37:12. Relevant pages of the Poggioli Deposition are annexed as Exhibit H.

**Response:    Denies materiality.**

27.    Poggioli rejected the officer of command discipline. Poggioli Dep (Ex. H), at 35:23-37:12; *see also* Ex. G, at p.3.

**Response:    Denies materiality.**

28. By letters dated July 18 and September 9, 2005, Commissioner Carroll appointed Robert J. Ponzini to conduct the disciplinary proceedings and issue a report and recommendation. Poggioli's Rule 56.1 Counterstatement (Ex. C), at ¶63.

**Response:    Admits.**

29.    Poggioli has no independent basis to believe that Robert Ponzini was biased against him and in favor of the City of New Rochelle. Poggioli's Rule 56.1 Counterstatement (Ex. C), at ¶64.

**Response:    Denies.**

7

30.    The disciplinary hearing commenced on December 15, 2005 and was held on eight separate dates, concluding on July 7, 2006. Poggioli's Rule 56.1 Counterstatement (Ex. C), at ¶65.

**Response:    Denies materiality.**

31.    Poggioli testified at the disciplinary hearing on March 9, 2006. A copy of the transcript of his testimony is annexed as Exhibit I.

**Response:    Admits.**

32.    On April 24, 2007, Hearing Officer Ponzini issued his report and recommendation finding that the NRPD had sustained its burden on all of the charges stemming from the Persico Assignment, and directing the parties to submit briefs on the appropriate penalty. A copy of the report and recommendation is annexed as Exhibit J.

**Response:    Denies materiality.**

33.    On June 25, 2007, Hearing Officer Ponzini issued a separate "Penalty Recommendation," in which he recommended that the appropriate penalty was termination. A copy of the Penalty Recommendation is annexed as Exhibit L.

**Response:    Denies materiality.**

34.    On July 20, 2007, Poggioli was terminated from his employment with the City as a Police Officer with the NRPD. Poggioli Dep. (Ex. H), at 6:16-20.

**Response:    Admits.**

35.    Poggioli filed the complaint in the instant action (the "2007 Action") on July 24, 2007. Ex. A.

**Response:    Admits.**

36.    Defendants filed an answer to the complaint in the instant action on August

17, 2007. A copy of the answer is annexed as Exhibit L.

> **Response:**    **Admits.**

37.    This Court issued a scheduling order in the 2007 Action on October 5, 2007. A copy of the scheduling order is annexed as Exhibit M.

> **Response:**    **Admits.**

38.    On November 14, 2007, Poggioli initiated an Article 78 proceeding, entitled *In re Application of Joseph Poggioli v. Patrick J. Carroll, as Commissioner of Police for the City of New Rochelle, New York and the City of New Rochelle, New York,* Index #07/23578. A copy of the notice of petition and petition is annexed as Exhibit N.

> **Response:**    **Denies materiality.**

## FOLLOWING ARE MATERIAL UNDISPUTED FACTS AND GENUINELY DISPUTED ISSUES OF MATERIAL FACT THAT PRECLUDE THE GRANTING OF SUMMARY JUDGMENT

**Plaintiff's Protected Activities**

*1.    Prior Lawsuit*

39.    In 1994, Plaintiff filed a civil rights action in this Court alleging *inter alia* a violation of his Fourth Amendment rights by Carroll, the City of New Rochelle, and other high ranking members of the City's Police Department. Poggioli v. Carroll, 94 Civ. 8313 (BDP)(hereinafter "Poggioli I")(Defendants' Ex. C.) (Plaintiff's 56.1 Statement ¶69, 06 Civ. 12893 (CLB), Def. Ex. C).[2]

40.    At trial in Poggioli I resulted in a Plaintiff's verdict evidence adduced demonstrated that the Defendants in Poggioli I intentionally destroyed Plaintiff's personal

---

[2] Defendants have attached Plaintiff's Counter-Statement Pursuant to 56.1 submitted in the matter of Poggioli v. Murphy, et al., 06 Civ. 12893 (CLB).

property, broke into his departmental locker, and unlawfully reviewed/copied Plaintiff's

privileged notes of a meeting he had with his then PBA attorney (2/1/07 Poggioli Dep. pp. 7-8,

Nicaj Aff. Ex. 3 ).  None of the Defendants in Poggioli I was arrested, prosecuted and/or

subjected to disciplinary action for their unlawful conduct (Def. Ex. B; Plaintiff's 56.1

Statement ¶70, 06 Civ. 12893 (CLB), Def. Ex. C).

     41.     On November 26, 1996, a jury verdict was entered in Plaintiff's favor in the

amount of $155,000 in compensatory and punitive damages as a result of which Carroll were

infuriated and determined to retaliate against Plaintiff in the event an opportunity arose to do so

(2/1/07 Poggioli Dep. p. 9-10 Nicaj Aff. Ex. 3; Plaintiff's 56.1 Statement ¶71, 06 Civ. 12893

(CLB), Def. Ex. C; Def. Ex. D ¶ 10.

     42.     The action was settled in September 1997 and the Court discontinued the action

(Plaintiff's 56.1 Statement ¶72, 06 Civ. 12893 (CLB), Def. Ex. C).

     43.     Plaintiff was elected four times as President of the City of New Rochelle Police

Benevolent Association ("PBA") during the period from 2001 and ending on December 31, 2003

(2/1/07 Poggioli Dep. p. 54-55, Nicaj Aff. Ex. 3; Plaintiff's 56.1 Statement ¶73, 06 Civ. 12893

(CLB), Def. Ex. C).

     44.     During Poggioli's tenure as PBA President, he had clashes with the administration

(2/1/07 Poggioli Dep. p. 29-30, Nicaj Aff. Ex. 3).  In that connection, on numerous occasions as

PBA President, Poggioli publicly criticized the Police Department and Commissioner Carroll in

the various media outlets, including in newspapers, television and radio (2/1/07 Poggioli Dep. p.

72, Nicaj Aff. Ex. 3).  He also addressed his concerns before the City Council (2/1/07 Poggioli

Dep. pp. 72-73, Nicaj Aff. Ex. 3; Plaintiff's 56.1 Statement ¶74, 06 Civ. 12893 (CLB), Def. Ex.

C).

45.    Apart from appearing before the City Council with respect to contract negotiations, Poggioli appeared before the City Council to express his concern about the administration (2/1/07 Poggioli Dep. p. 73-74, Nicaj Aff. Ex. 3; Plaintiff's 56.1 Statement ¶75, 06 Civ. 12893 (CLB), Def. Ex. C).

46.    While PBA president and continuing until is termination set forth *infra* and known to Defendants, Plaintiff also expressed concern that antiquated police equipment posed a substantial risk to the safety of members of Police Department and to the public and shortage of manpower in the Department presented a similar danger to the members and to the public (First Amended Complaint, ¶14, Nicaj Aff. Ex. 2). Plaintiff continued to raise concern regarding these issues referenced after his tenure as PBA President had ended, which was known by Defendants until July 20, 2007 when he was terminated (First Amended Complaint ¶14, Nicaj Aff. Ex. 2).

*Defendants' Retaliatory Actions*

47.    In April of 2005 for the first time an opportunity arose for retaliation against Plaintiff on the basis of a complaint made by Sergeant Joseph to Captain Kealy regarding an incident where Poggioli was accused of having submitted an overtime slip for an off-duty police assignment for approximately one hour of time that he claimed to have worked but which Joseph, Kealy, Murphy and Carroll collectively agreed to accuse him of not working (Def. Ex. D ¶11; Plaintiff's 56.1 Statement ¶76, 06 Civ. 12893 (CLB), Def. Ex. C).

48.    In that connection the amount of money in controversy was approximately $67, a portion of which Defendants knowingly retained (despite their allegation that the private sector contractor [Persico Construction] who paid for the services Poggioli claimed to have worked should not have paid that money to the City at all) for expenses incurred in the Police Department. The balance of that sum was paid by Defendants to Plaintiff - - notwithstanding

11

their allegation that he was not entitled to be paid (Def. Ex. D ¶12; 2/1/07 Poggioli Dep. p. 19,

Nicaj Aff. Ex. 3; Plaintiff's 56.1 Statement ¶77, 06 Civ. 12893 (CLB), Def. Ex. C).

49.    On May 19, 2005, Kealy preferred against Plaintiff civil service disciplinary

charges accusing him of having submitted the referenced overtime request for time that he

allegedly did not perform services.  Carroll discussed the disciplinary charges against Poggioli

before the charges were filed (2/1/07 Poggioli Dep. pp. 19-20, Nicaj Aff. Ex. 3; Def. Ex. A ¶14;

Disciplinary Charges, Def. Ex. 5; 6/19/06 Poggioli Disc. Tr. p. 582, Nicaj Aff. Ex. 6 Plaintiff's

56.1 Statement ¶78, 06 Civ. 12893 (CLB), Def. Ex. C).

50.    In that connection: a) Defendants appointed and agreed to retain the services of a

"hearing officer" well known in the legal community to not only always rule in favor of the

municipal corporation paying his fees but to actually fabricate evidence to bolster his findings of

"fact" (2/1/07 Poggioli Dep. pp. 20-21, 23, Nicaj Aff. Ex. 3; Def. Ex. A ¶15 Plaintiff's 56.1

Statement ¶79, 06 Civ. 12893 (CLB), Def. Ex. C).

51.    During the disciplinary proceeding, the hearing officer refused to admit the City

PBA President's testimony (5/16/06 Poggioli Disc. Tr. p. 525, Nicaj Aff. Ex. 7; Plaintiff's 56.1

Statement ¶80, 06 Civ. 12893 (CLB), Def. Ex. C).

52.    In particular, the PBA President would have testified that during the course of that

prosecution Kealy was overheard by him (President) discussing in a hallway a self-evident

dilemma they faced - - how to explain prosecuting Plaintiff for requesting overtime money for

time allegedly not worked when numerous Police Officers routinely engaged in the same

conduct with respect to which Plaintiff stands accused (Def. Ex. A ¶16; 2/1/07 Poggioli Dep. p.

27, 30-31, Nicaj Aff. Ex. 3; Plaintiff's 56.1 Statement ¶81, 06 Civ. 12893 (CLB), Def. Ex. C)

53.    Over a period of months Defendants then prosecuted, at a cost of substantially in excess of $50,000, the retaliatory disciplinary proceeding having pre-determined that Plaintiff ill be found guilty and terminated from the City's employ (Plaintiff's 56.1 Statement ¶82, 06 Civ. 12893 (CLB), Def. Ex. C ; Def. Ex. D ¶16).

54.    In engaging in that retaliatory plan Defendants knowingly and deliberately failed to take law enforcement action, with respect to on-going criminal wrongdoing that permeated both the Police Department and the New Rochelle City Court (claimed by the City to be one of its "Departments") (Plaintiff's 56.1 Statement ¶84, 06 Civ. 12893 (CLB), Def. Ex. C; Def. Ex. D ¶17; 2/1/07 Poggioli Dep. p. 40-41, Nicaj Aff. Ex. 3).

**Selective Prosecution**

55.    Police Officers Colotti, Pitzeo and Vasquez were paid for off-duty work which they had not performed and they were not disciplined (2/1/07 Poggioli Dep. p. 33-34, Nicaj Aff. Ex. 3; 10/30/07 Poggioli Dep. 52-55, Nicaj Aff. Ex. 4). Plaintiff reported Colotti and Vasquez to Captain Gozzola (2/1/07 Poggioli Dep. p. 39-40, Nicaj Aff. Ex. 3). No disciplinary action was taken against them (2/1/07 Poggioli Dep. p. 34-40, Nicaj Aff. Ex. 3; Plaintiff's 56.1 Statement ¶83, 06 Civ. 12893 (CLB), Def. Ex. C).

56.    On one occasion Officer Young submitted overtime sheets indicating that he worked from 9:00 a.m. to 6:00 p.m. when he in fact arrived between 9:10 and 9:15 a.m. and worked until 5:45 p.m. (7/7/06 Poggioli Disc. Tr. p. 599). In that instance, Captain Gazzola simply had Young "redo [their] overtime hours" and no disciplinary charges were preferred (7/7/06 Poggioli Disc. Tr. p. Tr. 600, Nicaj Aff. Ex. 9).

57.    Police Detective Robert D'Andrea was not arrested, criminally prosecuted, and/or disciplined for stealing evidence (a computer) from the Department's Property Clerk's Office

and then caught discarding the evidence in the garbage. Subsequently D'Andrea, who was recruited by Defendants to testify against Plaintiff in the disciplinary proceeding, was reassigned as the Department's Communications Supervisor in charge of intra-departmental security systems (Def. Ex. A ¶17; 2/1/07 Poggioli Dep.p . 40-41, Nicaj Aff. Ex. 3; 10/30/07 Poggioli Dep. 30-31, Nicaj Aff. Ex. 4; Plaintiff's 56.1 Statement ¶85, 06 Civ. 12893 (CLB), Def. Ex. C).

58.    Detective Landau falsified a police report in connection with a drug arrest and may have been suspended for a brief time (10/30/07 Poggioli Dep. p. 22, 28, Nicaj Aff. Ex. 4). Landau also tampered with Plaintiff's access card on multiple occasions (10/30/07 Poggioli Dep. 22-23, Nicaj Aff. Ex. 4).   Poggioli notified Captain Kealy but nothing happened (10/30/07 Poggioli Dep. 23-24, Nicaj Aff. Ex. 4).

59.    Detective Grosso committed larceny (10/30/07 Poggioli Dep. p. 29, Nicaj Aff. Ex. 4).  While his unit was raiding an apartment, he stole a cable box (10/30/07 Poggioli Dep. p. 29, Nicaj Aff. Ex. 4).  Grosso was then reassigned (10/30/07 Poggioli Dep. 30, Nicaj Aff. Ex. 4).

60.    Detective Torres, while driving intoxicated in White Plains, was involved in a hit and run accident which resulted in injury to another person.  Torres was merely suspended briefly (10/30/07 Poggioli Dep. 33-34, Nicaj Aff. Ex. 4).

61.    Officer Finney was caught soliciting a prostitute during a sting operation in New York City (10/30/07 Poggioli Dep. p. 47-48, Nicaj Aff. Ex. 4). Finney was suspended for 30 days (10/30/07 Poggioli Dep. 48-49, Nicaj Aff. Ex. 4).

**Procedural History and Retaliatory Termination of Plaintiff**

62.    On or about November 3, 2006, Plaintiff filed a Complaint in Federal Complaint, Poggioli v. Murphy, et al., 06 Civ. 12893 (CLB) arising from Defendants' retaliatory and selective prosecution of him (Complaint, 06 Civ. 123893 (CLB), Def. Ex. D) .

63.     Pursuant to this court's Civil Case Discovery Plan and Scheduling Order, Plaintiff's deposition was then taken and Defendants-Appellants moved in relevant respect for summary judgment on qualified immunity.

64.     In furtherance of the plan to retaliate against Plaintiff, on July 20, 2007, Carroll terminated position was terminated (Complaint ¶9, Def. Ex. A).

65.     On July 24, 2007, Plaintiff filed the instant action, Poggioli v. Carroll, 07 Civ. 6674 (CLB) (Def. Ex. A).

66.     Two days later, this Court issued a Memorandum and Order denying summary judgment on qualified immunity to three of the four Defendants, including Carroll (Decision, Def. Ex. G).

67.     This Court also granted Plaintiff's application to file an amended complaint detailing additional First Amendment protected activity which Poggioli had briefly testified about during his deposition (Decision p. 7, Def. Ex. G).

68.     Plaintiff then filed and served a First Amended Complaint asserting that while he was PBA president during the period from January 1, 2001 through December 31, 2003 and after until his termination on or about July 20, 2007, known to Defendants he had expressed concern that: (1) City's antiquated police equipment posed a substantial risk to the safety of members of the Police Department and to the public; and (2) the shortage of manpower in the Police Department presented a substantial danger to the members of the Police Department and to the public (First Amended Complaint, 06 Civ. 12893 (CLB), Nicaj Aff. Ex. 2).

69.     That case is currently on interlocutory appeal to the Second Circuit for the Court of Appeals (Civil Docket, 06 Civ. 12893 (CLB), Def. Ex. F)

70.    Plaintiff also seeks to amend the instant action (Proposed First Amended Complaint, Nicaj Aff. Ex. 1)

71.    In accordance with this Court's Civil Case Discovery Plan and Scheduling Order, Plaintiff's deposition was then taken and Defendants-Appellants moved in relevant respect for summary judgment on qualified immunity (Civil Case Discovery Plan, Def. Ex. M).


Wherefore, upon the foregoing Plaintiff's Statement made pursuant to local Rule 56.1, the Affidavit of Drita Nicaj with annexed exhibits thereto, and the Memorandum of Law in opposition to Defendants' motion, Defendants' motion for summary judgment should in all respects, be denied.


Dated:        White Plains, New York
              January 2, 2008

                                   LOVETT & GOULD, LLP

                                   By: _____
                                   Drita Nicaj
                                   Attorneys for Plaintiff
                                   222 Bloomingdale Road
                                   White Plains, New York 10605
                                   (914) 428-8401

16