WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn:  Peter A. Meisels (PM-5018)
       Lalit K. Loomba (LL-9755)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JOSEPH A. POGGIOLI,                                                :
                                                                   :   07 Civ. 6674 (CLB)
                            Plaintiff,                             :
                                                                   :
       -against-                                                   :
                                                                   :
PATRICK J. CARROLL, and the CITY OF NEW                            :
ROCHELLE, New York,                                                :
                                                                   :
                            Defendants.                            :
------------------------------------------------------------------ x


**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**


WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000

1865342.1

# TABLE OF CONTENTS

                       **Page**

Introduction ............................................................................................................. 1

Preliminary Statement ............................................................................................ 1

Statement of Facts .................................................................................................. 1

Argument ................................................................................................................ 5

    POINT I

    DEFENDANTS' MOTION FOR QUALIFIED
    IMMUNITY IS NOT PREMATURE ........................................................ 6

    POINT II

    POGGIOLI CANNOT SET FORTH A
    VALID FIRST AMENDMENT CLAIM ................................................... 7

    POINT III

    POGGIOLI CANNOT SET FORTH A VALID
    FOURTEENTH AMENDMENT CLAIM .................................................. 9

    POINT IV

    POGGIOLI'S AMENDED COMPLAINT IS FUTILE ............................. 12

    POINT V

    THIS COURT SHOULD ABSTAIN FROM CONSIDERATION
    OF POGGIOLI'S SELECTIVE PROSECUTION CLAIM ....................... 13

Conclusion ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Page**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,*
106 F.3d 11 (2d Cir. 1997)..........................................................................................12

*African Trade & Information Center, Inc. v. Abromaitis,*
294 F.3d 355 (2d Cir. 2002).........................................................................................10

*Bonato v. Big Brazil Found. Corp.,* 2007 U.S. Dist. LEXIS 26019,
(S.D.N.Y. April 6, 2007)..............................................................................................13

*Burkybile v. Board of Ed. of Hastings-on-Hudson et al.,*
411 F.3d 306 (2d Cir. 2005)......................................................................................7, 8

*Caruso v. Kelly,* 1994 U.S. Dist. LEXIS 9459 (S.D.N.Y. July 13, 1994) ......................11

*Clarke v. City of New York,* 2001 U.S. Dist. LEXIS 11136,
(E.D.N.Y. Aug. 2, 2001)...........................................................................................9, 13

*Dorsett-Felicelli, Inc. v. County of Clinton,*
371 F. Supp.2d 183 (N.D.N.Y. 2005)..........................................................................14

*Harlen Assocs. v. The Incorporated Village of Mineola,*
273 F.3d 494 (2d Cir. 2001).........................................................................................11

*Herzog v. Will,* 931 F. Supp. 276 (S.D.N.Y. 1996) ..........................................................6

*Kelleher v. City of Reading,* 2002 U.S. Dist. LEXIS 9408,
(E.D. Pa. May 29, 2002) ......................................................................................8, 9, 13

*Morely v. Lakeview School Dist. Bd. of Ed.,* 2007 U.S. Dist. LEXIS
88555 (W.D. Mich. Dec. 3, 2007) ...........................................................................8, 13

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1, 103 S. Ct. 927 (1983)................................................................................13

*Neilson v. D'Angelis,* 409 F.3d 100 (2d Cir. 2005) ............................................10, 11, 12

*Reuland v. Hynes,* 460 F.3d 409 (2d Cir. 2006) .................................................................8

*Tasadfoy v. Ruggiero,* 365 F. Supp.2d 542 (S.D.N.Y. 2005) ............................................8

*Uddin v. City of New York,* 427 F. Supp.2d 414 (S.D.N.Y. 2006) ....................................3

1865209.1

- iii -

**Page**

*Statutes and Regulations*

Fed. R. Civ. Proc. 56(e) ...........................................................................................3, 6

Fed. R. Civ. Proc. Rule 15(a)......................................................................................12

## Introduction

Defendants Patrick J. Carroll ("Carroll") and the City of New Rochelle ("City") (collectively, the "Defendants") respectfully submit this reply memorandum of law in further support of their motion for summary judgment.

## Preliminary Statement

In their main brief, the Defendants demonstrated that plaintiff Joseph A. Poggioli ("Poggioli") could not establish a valid First or Fourteenth Amendment claim and therefore Commissioner Carroll is entitled to qualified immunity. In opposition, Poggioli misstates the factual record and relies largely on a proposed amended complaint that is so deficient in details as to be essentially meaningless. For these reasons, and the reasons set forth in Defendants' main brief, Commissioner Carroll is entitled to qualified immunity and the Defendants' motion for summary judgment should be granted in its entirety.

## Statement of Facts

While Poggioli's version of the events is assumed to be true for purposes of this motion, there are a number of factual insufficiencies that should be noted:

(1) Poggioli claims that during his tenure as PBA President he publicly criticized the Police Department and Commissioner Carroll in "various media outlets, including newspapers, television and radio," and that he also addressed his concerns before the City Council. Poggioli has never named a single media outlet, newspaper, or television or radio program in which his alleged criticism was allegedly published. *See* Poggioli Dep.

(2/1/07) (Ex. 3), at 72-73.[1] Poggioli does allege that he made statements critical of the Police Department in the public setting of City Council meetings. However, Poggioli admitted that he only spoke before the New Rochelle City Council on the following dates: July 10, 2001, February 12, 2002, March 12, 2002, April 9, 2002, October 8, 2002, November 12 2002 and December 12, 2002. Poggioli's Rule 56.1 Counterstatement (Ex. D), at ¶68. Hence, the last specified instance of speech by Poggioli occurred about 4.5 years before he was terminated.

(2) Poggioli alleges in his proposed amended complaint that he expressed concern about antiquated police equipment and lack of manpower, and that he continued to do so after his tenure as PBA President ended (12/31/03) and up to the date of his termination. Ex. 1, at ¶¶7-8. However, Poggioli has failed to provide any specifics regarding this allegedly protected speech. He does not allege, nor has he testified, as to when such speech was made, what specifically was said, to whom or in what context. *Id.*

(3) Poggioli claims that Carroll and others collectively agreed to accuse him of not working for the entire period he claimed to have worked during the Persico Assignment. However, in his deposition, Poggioli admitted that the only basis for his allegation of an agreement was the fact that the Department conducted an investigation into his claim for overtime payment. Poggioli Dep. (2/1/07) Ex. 3, at 16. The mere fact of an investigation is not sufficient proof of an agreement to accuse him of not working.

(4) In connection with the disciplinary hearing, Poggioli claims that Carroll retained a hearing officer allegedly known to carry a bias in favor of the municipal corporations that retain him. However, Poggioli admitted at his deposition that the only

---

[1] Numbered exhibits (*e.g.*, Ex. 1, Ex. 2, etc.) are annexed to the affirmation of Drita Nicaj, Esq., dated December 21, 2007. Lettered exhibits (*e.g.*, Ex. A, Ex. B, etc.) are annexed to the declaration of Lalit K. Loomba, Esq., dated December 12, 2007.

-2-

1865342.1

basis for this claim was information he learned from his attorney. Poggioli Dep. (2/1/07) Ex. 3, at 20-23. Further, he refused to disclose that information based on attorney-client privilege. *Id.*

(5) Poggioli claims that PBA President Hayes would have testified at the disciplinary hearing that he overheard Captain Kevin Kealy discussing a "self-evident dilemma" faced by the Department, namely how to explain prosecuting Poggioli for submitting a false application for overtime when other officers allegedly engaged in similar conduct but were not disciplined. However, in his deposition, Poggioli did not point to any competent evidence that Captain Kealy ever made such a statement. Pogggioli Dep. (2/1/07) Ex. 3, at 3-31. He only mentioned a hearsay statement of PBA President Hayes. *Id.* To defeat a motion for summary judgment, a plaintiff must employ evidence in admissible form. Fed. R. Civ. Proc. 56(e); *Uddin v. City of New York*, 427 F. Supp.2d 414, 434 (S.D.N.Y. 2006). Poggioli has failed to do so.

(6) Poggioli claims that the report and recommendation issued by the hearing officer was substantially falsified and/or materially inaccurate, and was so issued in accordance with the hearing officer's alleged bias in favor of the New Rochelle Police Department. But again, at his deposition, Poggioli admitted that the only basis for this claim was information he received from his attorney. Poggioli Dep. (10/30/07) Ex. 4, at 13-15. And again, he refused to provide that information based upon attorney-client privilege. *Id.*

(7) Poggioli claims that members of the Department who allegedly violated the civil rights of "the only Police Officer of Middle Eastern descent employed by the City" received more lenient treatment than Poggioli. Again, at his deposition, Poggioli

-3-

admitted that the only basis for this claim was information he received from his attorney. Poggioli Dep. (10/30/07) Ex. 4, at 37-40. Poggioli refused to detail the claim based on the attorney-client privilege. *Id.*

(8) Poggioli also references Police Officers Colotti, Pitzel, Vasquez and Young, who he claims were paid for off-duty work not performed and were not disciplined. Poggioli fails to recognize that, even assuming the truth of his claims, those cases are not similar to his because the officers were stationed at the job site during the time period claimed for, and did not, as in Poggioli's case, claim compensation for time during which they were not even present at the job site.

(9) Poggioli claims that Sgt. D'Andrea was not subjected to discipline for his role in the disappearance of a computer from the Departmental evidence room. This is simply not correct. In fact, Poggioli testified at his deposition that Commissioner Carroll wanted to fire D'Andrea but that Poggioli, then acting in his capacity as PBA President, negotiated on his behalf and reduced the penalty to a 20-day suspension. Poggioli Dep. (2/1/07) Ex. 3, at 47. Poggioli also suggests that D'Andrea was given a job in the Department's Security department as a reward for agreeing to testify against Poggioli in the underlying disciplinary hearing. *Id.* In fact, Poggioli testified that "D'Andrea obviously was going to get fired by the police department and he changed his position from general investigation unit to in charge of security systems." *Id.* at 52. Clearly, D'Andrea's reassignment -- which occurred while Poggioli was serving as PBA President, and well before the disciplinary charges underlying this case were preferred -- was a demotion, given as an alternative to terminating D'Andrea. *Id.*

In addition, Poggioli admitted that he did not know whether Sergeant D'Andrea had a prior disciplinary record when he was given the 20-day suspension. Poggioli Dep. (10/30/07) Ex. 4, at 33:5-7. Poggioli, on the other hand, had an extensive prior disciplinary record, all of which was detailed in the penalty report issued by the hearing officer and taken into account in the penalty recommendation. Ex. K, at 5-6.

(10) Poggioli claims that Detective Landau falsified a police report, but the only basis for this claim, according to Poggioli's deposition testimony, is that only two persons could have done it and one of them, Detective Donald, was Poggioli's friend. Hence, he concludes, Landau must have done it. Poggioli Dep. (10/30/07) Ex. 4, at 22-24. In other words, Poggioli's only proof that Detective Landau falsified a police report is an assumption.

(11) Poggioli claims that Detective Grosso committed larceny involving a cable box at a home that his unit raided. In his deposition, however, Poggioli admitted that Grosso was investigated and demoted (lost his gold shield) as a result of the incident. Poggioli Dep. (10/30/07) Ex. 4, at 29-30. Hence, Detective Grosso, according to Poggioli, did not go unpunished. Poggioli also admitted that he had no knowledge whether Detective Grosso had a prior disciplinary record at the time, in contrast with Poggioli. *Id.* at 30:13-16.

(12) Poggioli claims that a Detective Torres was involved in a hit and run accident while driving intoxicated. But in his deposition, Poggioli admits that Detective Torres was investigated and suspended, Poggioli "thinks," for thirty days. Poggioli Dep. (10/30/07) Ex. 4, at 33-34. The only basis for this claim is "word of mouth." *Id.* at 35:9-14. Poggioli also fails to mention that he too was offered a thirty-day suspension (with a

6-month limit on special-duty assignments) in satisfaction of the underlying disciplinary charges in the instant case. Poggioli Dep. (2/1/07) Ex. 3, at 95.

(13) Poggioli claims that Officer Finney was caught soliciting a prostitute in a sting operation in New York City. Poggioli's source of information for this claim is "common knowledge," Poggioli Dep. (10/30/07) Ex. 4, at 49:16, hardly admissible information as required by Rule 56(e). Moreover, in his deposition, Poggioli stated that Officer Finney was suspended for thirty days. Poggioli Dep. *Id.* at 47-49. Poggioli was offered the same. Poggioli Dep. (2/1/07) Ex. 3, at 95.

(14) Finally, while admitting that this Court already ruled that the alleged misconduct of employees assigned to the City Court is not material to the instant case, Poggioli nonetheless burdens the Court with a lengthy series of allegations relating to the same group. Poggioli's Memo of Law, at p.6 n.5. This Court has already ruled that alleged misconduct of City Court employees is not relevant. Ex. G, at p.6.

## Argument

### POINT I
### DEFENDANTS' MOTION FOR QUALIFIED IMMUNITY IS NOT PREMATURE

Poggioli's threshold argument that the instant motion is premature should be rejected. Poggioli relies on a 1996 decision of this Court, *Herzog v. Will,* 931 F. Supp. 276 (S.D.N.Y. 1996) (Brieant, J.). In *Herzog,* the defendants supported their motion for summary judgment on qualified immunity grounds with various affidavits which, this Court held, created factual disputes that required a trial to resolve. The instant case, by contrast, is governed under the Court's current rules, which require an early motion on qualified immunity grounds in which the plaintiff's version of the events is assumed to be

true, except to the extent of facial absurdity. Accordingly, *Herzog* is not applicable to the instant case.

## POINT II
## POGGIOLI CANNOT SET FORTH A
## VALID FIRST AMENDMENT CLAIM

For the reasons demonstrated in the Defendants' main brief, the 2006 Action is not a matter of public concern that can support a First Amendment retaliation claim in the instant case. But even assuming Poggioli's argument to the contrary, the 2006 Action, as alleged, cannot logically support a claim for retaliation.

The disciplinary charges were preferred in April 2005 and the ensuing disciplinary hearing was conducted between December 2005 and July 2006. The 2006 Action was not commenced until October 2006, after the hearing had concluded. Poggioli alleged in the 2006 Action that his guilt in the disciplinary hearing was rigged and pre-determined. Ex. D, at ¶16. Assuming that allegation to be true, if Poggioli's fate in the disciplinary hearing was pre-determined as of the filing of the 2006 Action, it follows logically that that lawsuit could have no impact on the outcome of the proceeding or the penalty imposed. *Burkybile v. Board of Ed. of Hastings-on-Hudson et al.*, 411 F.3d 306 (2d Cir. 2005), relied upon by Poggioli, is distinguishable because in that case, the plaintiff spoke out at a school district meeting about "improper government actions," *before* she was subjected to any adverse employment action. *Id.* at 313. Here, as alleged by Poggioli himself, his termination was a *fait accompli* even before he filed the 2006 Action.

Likewise, Poggioli's PBA Activities cannot support a First Amendment claim. It is undisputed that Poggioli's tenure as PBA President ended on December 31, 2003, more

than a year before the charges were preferred (May 19, 2005) and more than three years before Poggioli was terminated (July 20, 2007). In fact, Poggioli admitted that the last City Council meeting he attended was December 12, 2002, which extends even further the time gap between any protected speech and the adverse employment actions taken in this case. (Def. Ex. C, at ¶68.) Given the lengthy gap in time between Poggioli's allegedly protected speech and the adverse employment action challenged here, Poggioli cannot sustain a viable retaliation claim. *Burkybile,* 411 F.3d at 314; *Tasadfoy v. Ruggiero,* 365 F. Supp.2d 542, 551 (S.D.N.Y. 2005).

Similarly, Poggioili's vague references to statements made to "media outlets" cannot support a First Amendment retaliation claim. Poggioli has not specified (in any of his pleadings or depositions) the name of a single newspaper, magazine, television or radio program in which he allegedly uttered protected speech. And Poggioli has not cited a single case supporting a First Amendment claim on the basis of vague references to complaints made or concerns raised in "media outlets" in general. Poggioli's reliance on *Reuland v. Hynes,* 460 F.3d 409 (2d Cir. 2006), is therefore misplaced because in that case, the plaintiff sued over alleged retaliatory acts taken in response to two specific interviews published in New York Magazine.

In fact, courts have rejected First Amendment claims based on vague allegations of the nature made here by Poggioli. *Morely v. Lakeview School Dist. Bd. of Ed.,* 2007 U.S. Dist. LEXIS 88555 (W.D. Mich. Dec. 3, 2007) (allegation that plaintiff "had 'spoken' out regarding a wide range of subjects including . . . the safety of students, discrimination against teachers [and] discrimination on the basis of race of age" was insufficient to state a claim in the absence of specific examples of speech); *Kelleher v.*

*City of Reading,* 2002 U.S. Dist. LEXIS 9408, at *15 n.5 (E.D. Pa. May 29, 2002) ("[p]laintiff fails to identify the specifics of that speech, such as the time and place at which it took place or the circumstances in which the speech was given . . . [and hence] has provided insufficient evidence to establish a genuine issue of material fact"); *see also Clarke v. City of New York,* 2001 U.S. Dist. LEXIS 11136, at *19 (E.D.N.Y. Aug. 2, 2001) (not recognizing allegedly protected speech where plaintiff could not "identify with any specificity whatsoever when he criticized [the defendant]").

For the same reason, the vague allegation in Poggioli's proposed amended complaint that he "continued to raise concern" after his tenure as PBA President is not sufficient to support a First Amendment retaliation claim.

In short, in the absence of a specific allegation about particular speech, made on a particular date and in a particular context, Poggioli is left with his admission that his last appearance before the City Council was on December 12, 2002, more than two years before the charges were preferred and more than four years before he was terminated. Where, as here, the evidence shows that Poggioli violated Department rules in April 2005, just weeks before the charges were preferred, he has failed to allege or otherwise demonstrate facts to support a valid First Amendment retaliation claim.

## POINT III
### POGGIOLI HAS CANNOT SET FORTH A VALID FOURTEENTH AMENDMENT CLAIM

Poggioli argues that his Fourteenth Amendment claim is not dependent upon his First Amendment claim because the two claims have independent legal elements. He misses the point.

As demonstrated in Defendants' main brief, in cases where relief is sought under both First Amendment retaliation and Fourteenth Amendment selective prosecution theories and the facts and premises underlying such claims are the same, the Fourteenth Amendment claim is held to "coalesce" with the First Amendment claim, and its disposition will follow from the disposition of the retaliation claim brought under the First Amendment. *African Trade & Information Center, Inc. v. Abromaitis*, 294 F.3d 355, 362-363 (2d Cir. 2002). The relevant inquiry is whether the facts and premises underlying the claims are the same, not whether the claims themselves have differing legal elements. *Id.* at 363 ("plaintiffs' factual allegations throughout the case require the conclusion that their equal protection claim and their First Amendment claim coalesce").

Here, Poggioli's complaint – as well as his proposed amended complaint – contain the very same set of allegations underlying both his First and Fourteenth Amendment claims. *See* Def's Ex. A, at ¶¶12, 14; Plt's Ex. 1, at ¶¶14, 16. As the factual allegations underlying Poggioli's First and Fourteenth Amendment claims are identical, the two claims coalesce. And since Poggioli's First Amendment claim fails, so too does his claim under the Fourteenth Amendment.

Even assuming that Poggioli's constitutional claims do not coalesce under identical factual allegations, which they do, the Fourteenth Amendment selective prosecution claim still fails. The relevant standard is not, as Poggioli asserts, whether the comparators are "roughly equivalent." Where, as here, a plaintiff is not a member of a protected class, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be *extremely high*." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (emphasis added). Under this standard, a plaintiff must demonstrate

-10-

that he was treated differently from someone who is *prima facie* identical in all respects. *Id.*

As discussed above, Poggioli cannot meet this heavy burden. None of the police officers with whom Poggioli compares himself (*e.g.,* Colotti, Pitzel, Vasquez and Young) are similarly situated with Poggioli, as none were caught red-handed putting in for time on a job when they were not even at the job site. The other officers mentioned (D'Andrea, Grosso, Torres, and Finney) were not treated more leniently than Poggioli. These officers were disciplined for their misconduct. The only difference in Poggioli's case is that he refused to accept the discipline offered by the Department and instead insisted upon formal charges and a disciplinary hearing. Poggioli Dep. (2/1/07) Ex. 3, at 95. *See D'Angelis,* 409 F.3d at 106 (finding that officers who "immediately admitted their wrongdoing and voluntarily accepted the consequences of their action" were not similarly situated with the plaintiff who "falsely reported the [underlying] incident, thereby triggering the disciplinary process that [was] the very basis for [the] claim").

Poggioli's argument that the decision to terminate him was irrational also fails. A decision is irrational in this context when the defendant acts "with no legitimate reason for its decision." *Harlen Assocs. v. The Incorporated Village of Mineola,* 273 F.3d 494, 500 (2d Cir. 2001) (citation omitted). Here, Poggioli was caught red handed in a violation of Departmental rules. He was investigated and offered discipline of a thirty-day suspension and six month limit on special duty assignments, but he refused. After a full disciplinary hearing, the hearing officer recommended termination. The New Rochelle Police Department has a legitimate and important interest in policing its own members and, faced with a clear violation of its rules, to prosecute the offense. *See*

*Caruso v. Kelly,* 1994 U.S. Dist. LEXIS 9459, at * 12 (S.D.N.Y. July 13, 1994) ("It is self-evident that the effective operation of a police force is frustrated by the public indiscretions of its members in disobeying the laws they are commissioned to enforce.").

In Poggioli's case, his violation of the Departmental rules and regulations was investigated and confirmed and Poggioli was offered discipline in lieu of formal charges. Poggioli Dep. (2/1/07) Ex. 3, at 95. Poggioli chose not to accept the discipline and hence a disciplinary proceeding ensued. Each step taken by the Department leading up to the ultimate decision by Commissioner Carroll to terminate Poggioli was based upon and justified by the Department's legitimate interest in maintaining order and discipline within its own ranks. Since a rational person could have imposed sanctions on Poggioli which were different from those allegedly imposed on the other alleged comparators, Poggioli's claim fails as a matter of law. *Neilson v. D'Angelis, supra.*

## POINT IV
## POGGIOLI'S AMENDED COMPLAINT IS FUTILE

While leave to amend is freely given under Rule 15(a), a motion to amend will be denied where the amended complaint cannot state a valid claim and would therefore be futile. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 18 (2d Cir. 1997). Faced with the lengthy time gap between December 12, 2002 (the last time Poggioli appeared before the City Council) and his termination on July 20, 2007, Poggioli's proposed amended complaint attempts to fill the gap by raising a conclusory, unspecified and unsupported allegation that he "continued to raise concerns" following the conclusion of tenure as PBA President up to the point of his termination. Ex. 1, at ¶¶7-8.

-12-

The amendment does not support a valid claim because Poggioli has failed to identify a single specific example of speech. He does not say when, where, to whom or in what context the speech was made. As noted above, vague allegations such as these are insufficient to establish a valid First Amendment retaliation claim. *Morely v. Lakeview School Dist. Bd. of Ed.*, 2007 U.S. Dist. LEXIS 88555 (W.D. Mich. Dec. 3, 2007); *Kelleher v. City of Reading,* 2002 U.S. Dist. LEXIS 9408, at *15 n.5 (E.D. Pa. May 29, 2002); *Clarke v. City of New York,* 2001 U.S. Dist. LEXIS 11136, at *19 (E.D.N.Y. Aug. 2, 2001). Accordingly, Poggioli's application to amend his complaint should be denied.

## POINT V

### THIS COURT SHOULD ABSTAIN FROM CONSIDERATION OF POGGIOLI'S SELECTIVE PROSECUTION CLAIM

Notwithstanding Poggioli's characterization of the claims in his Article 78 proceeding, the petition itself clearly alleges constitutional violations. The petition does not specify that he seeks relief under the New York State Constitution only. "When similar actions are concurrently pending in state and federal court, a federal district court may, in the interests of judicial economy and sound judicial administration, defer to the state action and abstain from exercising its jurisdiction." *Bonato v. Big Brazil Found. Corp.,* 2007 U.S. Dist. LEXIS 26019, at *10 (S.D.N.Y. April 6, 2007), citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12, 103 S. Ct. 927 (1983). In the instant case, Poggioli has raised a Fourteenth Amendment equal protection claim in his state-court Article 78 proceeding, and he is litigating the identical claim in the 2006 Action, as well as in the present case.

Poggioli's reliance on *Dorsett-Felicelli, Inc. v. County of Clinton*, 371 F. Supp.2d 183, 190 (N.D.N.Y. 2005), is misplaced. In *Dorsett*, the Federal Court stayed resolution of punitive damages claim pending resolution of the Article 78 proceeding. Therefore, in the event this Court does not grant summary judgment on grounds of qualified immunity, it should abstain from ruling on Poggioli's Fourteenth Amendment claim based on selective prosecution.

## Conclusion

For the reasons set forth above, and in the Defendants' main brief, this Court should grant summary judgment in favor of Commissioner Carroll and the City of New Rochelle.

Dated: White Plains, New York
January 22, 2008

        WILSON, ELSER, MOSKOWITZ,
        EDELMAN & DICKER LLP
        Attorneys for Defendants

        Peter A. Meisels (PM-5018)
        Lalit K. Loomba (LL-9755)

        3 Gannett Drive
        White Plains, NY 10604
        (914) 323-7000
        File No. 07367.00065